PAROL EVIDENCE—*When written contract not varied by admission of*—The admission of parol evidence to establish a contemporaneous, collateral, substantive agreement, relating to the same subject matter and forming a part of the consideration of a written contract, does not contravene the general rule that parol evidence will not be received to contradict; vary, or in any manner control the legal import of a written contract.

APPEAL FROM PULASKI CIRCUIT COURT.

HON. JOHN WHYTOCK, *Circuit Judge.*

*Gallagher & Newton,* for Appellants.

We submit that the decision of the court below was erroneous on two grounds:

*First.* Mistake of original transaction. See *Baltimore etc., Steamboat Co., vs. Featherston,* 54 *Penn.,* (4) 77; *Woodfin vs. Slader,* (*Phill. N. C.*) *l.* 200.

*Second.* It was a collateral substantive agreement, and as such can be proved by parol. *Branch vs. Wilson,* 12 *Fa.,* 543. Part only was reduced to writing. *Cobb vs. Wallace,* 5 *Cold.* (*Tenn.*) 138; *Fox vs. Parker,* 44 *Barb.,* 541.

*Farr & Fletcher,* for Appellees.

The note was the written contract between the parties, and it is a well established rule of law that a parol contemporaneous agreement will not be allowed to contradict or vary the written contract of the parties. *Borden et al. vs. Peay, Rec.,* 20 *Ark.,* 294; *Greenleaf on Ev., vol.* 1, *secs.* 275, 282, 319; *also Featherston vs. Wilson,* 4 *Ark.,* 154.

BENNETT, J.—Fletcher & Hotze sued appellants, in the Pulaski Circuit Court, upon their promissory note for $791 35. Appellants appeared and filed their answer, wherein they set forth that being indebted to the plaintiffs, Fletcher & Hotze, in a certain sum upon account, they delivered to plaintiffs an amount of cotton, which, at the time of delivery, was to be

credited upon said account at the rate of fourteen cents per pound, but, " if there should be a rise in market when said cotton should be sold in value over and above fourteen cents; the defendants were to receive the benefit of said rise or its market value." With this understanding the defendants executed their note for the balance of the account, with the further agreement that the amount, if any, of the excess in price of the cotton, when sold, should be credited upon it. The answer also alleges that the cotton did sell for a greater amount than fourteen cents per pound, amounting in the aggregate to $400, and they claim that said amount should be allowed them in settlement of the note.

Appellees filed demurrer to answer, which was sustained by the court. Judgment was rendered for full amount of note and damages, from which judgment an appeal was granted. Two causes of demurrer were assigned, viz: "1st. Because the said answer sets up a *verbal* contemporaneous agreement by which the note sued for on should be credited. 2d. Because said answer alleges that there was an agreement between plaintiffs and defendants, at the time said note was executed, that if there should be a rise in the price of cotton, said defendants should have the benefit of the rise in thirty-eight bales of cotton which defendants had previously sold to plaintiffs at fourteen cents per pound, and said answer does not allege that said agreement was in writing.

The demurrer may be considered as a whole, as both causes assigned are based upon the general rule that parol evidence is not admissible to vary or alter a written instrument, and, if admissible for any purpose, it must generally have a foundation in pre-existing evidence of fraud, accident or mistake.

It is certainly true that parol evidence will not be received to add to or take from a written agreement a term or stipulation which, though agreed upon between the parties as part of the contract, was not introduced into the written instrument, for this would be to alter the agreement. But, consistently with this principle, it is well established that a substan-

tive collateral agreement may be substantiated by parol evidence. Chitty says : " After an agreement has been reduced to writing, it is, by the rules of the common law, competent to the parties at any time before breach of it by a new contract not in writing, either altogether to waive, dissolve or annul the former agreement or in any manner to add to or substract from, or vary or qualify the terms of it and thus to make a new contract which is to be proved, partly by the written agreement and partly by the subsequent verbal terms engrafted on what will then be left of the written agreement." Thus, when there was a written contract " for the hire of a horse for six weeks at two guineas, Lord Ellenborough permitted parol testimony to be given that, at the time of the hiring, it was expressly stipulated that the horse would shy, and the hirer, if he took him, should be liable to all accidents."

In the case of *The King vs. Larmidon,* 8 *T. R. Durnford & East,* 379, the question as to a settlement was, whether the parties intended to contract as master and servant, or as master and apprentice; the written agreement was as follows : " I, J. M, do hereby agree with J. C. to serve me three years to learn the business of a carpenter.; the first year to have, 1s 2d per day, as follows, etc." In addition to this J. C. was admitted to prove at the trial that, at the time of signing the agreement, he agreed to give J. M. the sum of three guineas as a premium to teach him the trade and that he was not to be employed at any other work. The court of King's Bench held that the evidence was admissible.

How does the case before us appear from the pleadings ? By the filing of the demurrer, the plaintiffs, at least for the time being, admitted the truth of the answer. From this we learn that the Weavers were owing Fletcher & Hotze a large sum of money for goods, etc.; that in order to liquidate this sum in part, the Weavers let them have thirty-eight bales of cotton. At the time of delivering this cotton it was stipulated between them that the Weavers were to have credited upon

their account the cotton at fourteen cents per pound, but with the additional understanding, that if it should bring more, when sold, they were to have the benefit of the advanced price. Fletcher & Hotze credited the Weavers account at fourteen cents per pound. A balance appearing to be due them after deducting the value of the cotton at that price, the Weavers executed the note which is the foundation of this action. When the cotton was sold, it brought $400 more than the amount which the Weavers had been credited with by Fletcher & Hotze, which amount they have received from the cotton, and the Weavers claim should be deducted from the note.

If the evidence of the facts, as alleged in the answer of the defendants, would tend to contradict, vary, or in any manner control the legal import of the note sued on, as between the parties, its admission could not be sanctioned. But on a careful examination of the answer it will be seen that there is nothing inconsistent with the written legal effect of the note. The facts alleged, and the evidence necessary to substantiate them, will only establish a distinct collateral agreement between the same parties, which was not considered necessary to be put in writing when the note was given, but which, in fact, constituted, in part, the consideration of it. The authorities are abundant that proof of such an agreement, not inconsistent with the terms of the note, may be made by parol evidence. *Prible vs. Baldwin,* 6 *Cush.,* 557; *Nickerson vs. Sanders,* 36 *Me.,* 413; *Hersey vs. Venel,* 39 *Me.,* 271; *Burney vs. Morrel,* 57 *Id.,* 372; *Brunch vs. Wilson,* 12 *Florida,* 543; *Cobb vs. O'Neill,* 2 *Sneed,* 438.

Has the fact that the plaintiffs are suing upon a note, given under these circumstances, placed them in any different relation to the defendants than if the suit had been brought upon the original account? The promise of the defendants to pay the balance due on an account at a certain time, with the understanding that that balance might be reduced by certain contingencies which might arise, has, it is true, undergone the slight

33

modification of having the first part of the agreement put in the form of a written obligation, which is the foundation of this suit; but still the plaintiffs are in fact seeking to enforce the original contract, and the question of right must be settled in the same manner as though the action was in form upon the original account. But the plaintiffs, by their demurrer, urge that the damages or credits claimed do not spring out of the written obligation sued upon, but arise under the collateral agreement. It is undoubtedly true that there can be no counter claim by setting up an independent contract on the part of the defendant. But that is not this case. The defendants allege facts which, if true, show that the plaintiffs have appropriated moneys belonging to them which should go in part payment of the note. The amount of $400, so used, grows out of the mutual stipulations between the parties, made at the time the note was given and relating to the subject matter. There can be no difference in principle, whether the whole transaction is embodied in one written instrument setting forth the cross obligations of both parties, or whether it takes the form of a separate and distinct understanding—one in writing, the other verbal—by each party.

The defendants proposed to the plaintiffs to let them have a certain lot of cotton, to be credited on their account, at 14 cents per pound—they, the defendants, to be entitled to the rise. Upon this understanding they executed their note as an evidence of the balance due at that time. If the cotton had only sold for 14 cents per pound that would have shown what defendants were owing plaintiffs when the sale was made, but the cotton brought $400 more when sold, which amount, under the agreement, pays the note to that extent—it having been used by plaintiffs. Had the agreement, as to the rise, been incorporated into the note, this answer would have been a good and valid counter claim under the code. So it would have been had the whole subject matter rested in parol without writing. The nature of this transaction, however, cannot be changed by putting the

several stipulations of the parties into the form of distinct written contracts. Nor can it make any substantial difference that the undertakings of one party have been reduced to writing, while the engagements of the other remain in parol. In substance, it is still the case of mutual stipulation between the same parties, made at the same time, and relating to the same subject matter. The forms which the parties may have adopted for the purpose of manifesting their agreements cannot affect the rights, so far as the question is concerned. Whether all the mutual stipulations have been embodied in one instrument or in several, or whether some have been put upon paper while others rest in parol, the reason still remains for allowing the claims of both parties, growing out of the same transaction, to be adjusted in one action, if for no other reason than to avoid circuity or multiplicity of actions, and doing complete justice to both parties. In the case of *Reab vs. McAllister*, 8 *Wendall*, 109, Chancellor Walworth well remarked that "there is a natural equity, especially as to claims arising out of the same transactions, that one claim should compensate the other and that the balance only should be recovered." But the question of showing, by parol, independent collateral agreements, in connection with the written cause of action, is well settled upon authority. In *Frisbee vs. Hoffnagle*, 11 *Johns. R.*, 50, the action was upon two promissory notes, given by the defendant to secure the purchase money for a piece of land which the plaintiff had conveyed to the defendant with warranty. The defendant was allowed to defeat the action by showing a breach of warranty. The parties to this suit had given to a single transaction the form of two distinct agreements, and yet, when the defendant was sued upon his promise, he was allowed to set up a breach of the plaintiff's undertaking in answer in the action. The case of *Spaulding vs. Vandercock*, 2 *Wend.*, 431, in every important particular, is like the case under consideration. The plaintiff sold provision barrels and agreed that they should be such as would pass inspection under the law. The defendant had

given his note for the price, while the plaintiff's promise still remained in parol. Yet, in an action upon the note, the defendant was allowed to show this fact. In the case of *Borden et al. vs. Peay, Receiver*, 20 *Ark.*, 294, Chief Justice English held: "That in a suit upon a note, payable at a specified day, the defendant will not be permitted to introduce evidence of a parol contemporaneous agreement that the note was to be paid at a different day or in a different manner, as that the parties had agreed that the note was to be paid in work, and that the collection of it was delayed that the debtor might have the benefit of this agreement." But, "it was competent, however, for the parties to show that printing had been done, the time when done and the amount and price thereof, and that by agreement of parties the price of the work so done was appropriated as a payment upon the notes, because such evidence relates to the discharge of the notes, and in no way affects the terms of the written contract."

The same general doctrines will be found in the celebrated case of *Reab vs. McAllister*, 8 *Wend.* 109; also in *Burton vs. Stewart*, 3 *Wend.*, 236; *Still vs. Hall*, 20 *Id.*, 57. There is, therefore, nothing in the position that the defense, set up in the answer, contradicts, varies or alters the note. The defendants do not deny the execution of the note, but admit it. There is nothing inconsistent with this written stipulation of the parties, and the facts, as alleged in the answer, are a distinct collateral agreement, an independent substantive matter which was not required to be placed in writing. When, in the future, the cotton, which had been received, rose in value to the amount of $400, the defendants were entitled to that much money or credit. If appropriated by the plaintiffs, it virtually became a payment to that extent of the note or other indebtedness of theirs.

The demurrer was improperly sustained; the cause is remanded with instructions to overrule the demurrer, and proceed to trial not inconsistent with this opinion.