## TILLAR v. WILSON.

### Opinion delivered June 4, 1906.

1. REFORMATION OF INSTRUMENT—SUFFICIENCY OF EVIDENCE.—Where, of evidence tending to show that a mutual mistake was made in drafting a contract, the most that can be said is that a mere preponderance tends to prove the alleged mistake, a reformation will not be decreed; the rule being that the evidence to establish the mistake must be "clear, unequivocal and decisive." (Page 261.)

2. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—Where a written contract, by its terms, undertook to compromise a pending lawsuit and to settle the affair of a partnership, parol evidence that the contract was intended to settle another matter not connected with the lawsuit or the partnership contravenes the rule which excludes parol evidence to vary the terms of a written contract. (Page 262.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

## STATEMENT BY THE COURT.

Appellant and appellee were co-sureties on notes executed by the Gravity Boiler Feeder Company, a corporation, to the Bank of Commerce. The notes were respectively for $300 and $500. Appellant paid the notes, and this suit was brought by him against appellee as co-surety for half the amount paid; appellant alleging in his complaint that the maker and the two other indorsers were insolvent.

Appellee by his original and amended answer set up a certain agreement which he alleges was understood to be and was a settlement of "all matters, claims and differences of every kind existing between them, and he avers that, if the claim sued on was not in terms included in the written agreement for settlement, it is because appellee through mistake or misapprehension did not fully understand the true meaning thereof. He says that the settlement of the claim sued on was a part of the consideration of the written agreement, and he prays among other things that, if necessary, the agreement be reformed so as to express the intention and understanding of the parties thereto. In reply appellant denied that the written agreement was intended to embrace the liability set up in the complaint, and denied that there was any mistake or misapprehension on the part of the appellee as to the meaning of the writing. The agreement set up in the answer is as follows:

"This is to show that T. O. Wilson and T. F. Tillar have this day compromised the litigation between them growing out of the suit now pending in the Pulaski Chancery Court, for a dissolution of the firm of Tillar & Wilson, and the appeals taken therefrom. The terms of this compromise are as follows:

"Tillar takes all the assets of the firm, and to that end Wilson hereby assigns to Tillar all his (Wilson's) interest in such assets, and Tillar also assumes and agrees to pay all the liabilities of the firm of Tillar & Wilson, together with all unpaid costs, including the receiver's fee, and Tillar shall be authorized to prosecute for his own benefit suit against the Cypress Lumber & Shingle Company now pending in the Supreme Court. In consideration of the foregoing, Tillar has this day paid Wilson

$1,750 in cash, and agrees to pay him an additional amount of $1,500 within thirty days from this date. If the latter amount is not paid within the thirty days, then this compromise shall become null and void, and the cash paid herein is to be accounted for by Wilson in the settlements of the accounts of the partnership of Tillar & Wilson. In addition to the payment of the aggregate sum of $3,250 by Tillar to Wilson, as hereinbefore set out, Tillar agrees to hold Wilson harmless from any and all claims of the creditors of the firm of Tillar & Wilson. Tillar is to pay off the debts within the thirty days or give Wilson a satisfactory bond that they will be paid.

"Dated this January 23, 1904.

[Signed]                                    "T. F. TILLAR,

"T. O. WILSON."

Appellee, after testifying concerning a partnership that had existed between himself and appellant, and after showing that suit was brought by appellant to dissolve the partnership, and that, growing out of the affairs of the partnership and its dissolution, a suit was pending in the Supreme Court involving differences between them which amounted to several thousand dollars, and out of which he expected to realize, should the litigation terminate in his favor, about six thousand dollars as against appellant, further testifies as follows:

"Tillar had at one time handed me a statement showing that he had paid out for the Gravity Boiler Feeder Company about $1,600. So on January 5, 1904, I wrote Tillar a letter asking him to advance me $3,000 on account of the balance that would be due me on the final settlement of the Tillar & Wilson firm, and proposing that if he would make the advance I would assume and pay half the amount he had paid out for the Gravity Boiler Feeder Company, but denying that I was really liable for anything on the latter account. Tillar did not accept my proposition—not directly. Shortly afterwards he visited Little Rock, and wanted to know the least I would take to settle up everything between us, and I told him $4,000. He said he would go home, and think about it. In a few days I went over to the office of his attorney, W. S. McCain, and said to him that decisions by the Supreme Court in the Ferguson Lumber case and in the Grady Shingle case might not be reached in two or three years, and I

asked his attorney to inform Tillar that I would compromise by accepting from him $3,500, he to take all the assets and give me a receipt in full. Tillar came up on February 23, and he proposed that we go over to the office of his attorney, W. S. McCain. We did so, and there we talked the matter over. He tried to get me to take less than $3,500. He proposed $3,000, but we finally agreed on $3,250. The contract was drawn up by Judge McCain as follows: [Here appellee makes a part of his testimony the agreement set out *supra*.] He then continues: "We did not sign the agreement at McCain's office, but we came over to the office of my attorney, Judge Allen, and I told Judge Allen I would like for him to look over the agreement, and see whether it needed any changes or corrections. Judge Allen took it, and said, 'Is this in full, is it a settlement of everything between you?' and I said 'Yes,' and he asked Mr. Tillar the same question, and he said 'Yes.' We then signed up the contract, and Tillar gave a check for $1,750. This contract was in settlement of everything between us individually as well as the partnership."

(All of the foregoing testimony was given over the objection of plaintiff as being irrelevant and incompetent.)

Samuel R. Allen testified: "I was the attorney of T. O. Wilson in the litigation between him and Tillar in regard to the dissolution of the firm of Tillar & Wilson. Wilson had a desk in my back office. The two came into my room, and Tillar said, 'Wilson and I have settled all our difficulties,' and Wilson said, 'Tillar has bought me out. We have been down to Judge McCain's office, and have come to an agreement. I suppose some paper is necessary, and we have had one prepared, which I would like to have you look over, and see if it is sufficient.' They handed me a paper and before reading it I asked them if they meant to say that they had settled all matters of every kind and nature between them, and they said 'Yes.' I then took the paper, the one copied above, prepared by McCain, and read it over carefully, and I then remarked to them 'that this paper in itself seems to refer solely to the affairs of Tillar & Wilson,' and they said 'it covers everything between us except an account Wilson owed the firm of Tillar & Company for Knights of Honor dues they had paid for him,' and I said 'I will just make this remark, so there will be no after-clap: While this paper is not quite as ex-

plicit as I would have made it, and while it does not cover the matter entirely, I think it will do.' I knew at the time that Tillar was claiming something from Wilson on account of the notes paid to the bank for the Gravity Boiler Company, and I had this in mind when they were talking to me."

Appellant's counsel objected to all of the foregoing testimony of Allen, and filed a motion to suppress the depositions of Wilson and Allen, and particularly that part relating to conversations at and before the time of the signing of the written agreement and explaining the meaning of the contract. The court overruled the motion, to which ruling plaintiff excepted.

Appellant testified in his own behalf as follows: "I was a co-surety with Wilson on the notes of the Gravity Boiler Company to the bank, and I paid them. This business of the boiler company had nothing to do with the shingle and timber business of Tillar & Wilson. The court realized about $15,000 on the sale of the Tillar & Wilson assets. At the time we made the agreement in Judge Allen's office there was no agreement except the written agreement, and that related entirely to the business of Tillar & Wilson. My attorney, W. S. McCain, wrote it up, and it was then referred to Judge Allen. We went to Judge Allen's office and signed it up there. Judge Allen, Wilson and I only were present. There was no other agreement except that which was in the writing signed. Judge Allen is mistaken in his recollection of what was said, and what he and Wilson testified to in their depositions is untrue, so far as relating to any other than the Tillar & Wilson matter."

The chancellor entered a decree for appellee, and this appeal was taken.

*W. S. McCain,* for appellant.

1. The compromise agreement was reduced to writing. Its meaning is plain. The claim sued on has no connection with the partnership business of the parties. The defense seeks to vary the meaning of the written instrument by parol testimony. 1 Greenleaf on Ev. § § 275, 288, 287, 292; 24 Ark. 210; 45 Ark. 198; 49 Ark. 285. See also 71 Ark. 185; 66 Ark. 399; *Ib.* 445; 65 Ark. 335.

2. Mere preponderance of evidence is not sufficient to war-

rant a reformation of the contract: The proof must be full, clear, decisive, free from doubt. Bishop on Contracts, 708. And the mistake must be mutual. 1 Wharton on Cont. 207; 14 Ark. 487; 41 Ark. 499; 49 Ark. 425; 46 Ark. 167; 56 Ark. 320; 72 Ark. 546. See also 70 Ark. 512; 71 Ark. 171.

*Ratcliffe & Fletcher,* for appellee.

1. The proof is clear that the matter in dispute in this case was intended by both parties to be included in the settlement, when it was entered into.

2. The evidence showing the agreement to settle this matter does not contravene the written agreement. It simply establishes a contemporaneous substantive agreement relating to the same subject-matter, and forming a part of the consideration of the written contract. 27 Ark. 510; 55 Ark. 112.

3. If the testimony be contradictory of the written agreement, the parties evidently signed it through mistake or misapprehension. The court has power to correct and reform it. 32 Ark. 342.

WOOD, J., (after stating the facts.) First. The chancellor found "that at the time the agreement as set forth in the answer was executed it was understood by and between the plaintiff and the defendant, and as part of the consideration for said agreement, that the claim sued upon herein as set forth in the complaint was to be fully settled and satisfied, and was so settled and satisfied by said agreement." If this finding were correct, the settlement of the amount due by appellee to appellant on account of the payment by the latter of the Gravity Boiler Feeder Company's notes was intended to be embraced in the written agreement, and its omission therefrom was a mistake common to both parties which would call for a reformation of the written agreement so as to effectuate their purpose. The decree of the court in favor of appellee was in effect tantamount to this. The testimony of appellee and Judge Allen tends to show that the parties to the agreement intended that it should settle all matters between them. But the testimony of appellant tends to show that it was intended to settle only differences growing out of the partnership transactions. So there is a conflict, and with the view most favorable to appellee it can only be said that there is a mere

preponderance of the evidence in his favor. But this is not suffi-
cient to entitle a party to reformation. The proof must be
"clear, unequivocal and decisive." *Goerke* v. *Rodgers,* 75 Ark.
72; *McGuigan* v. *Gaines,* 71 Ark. 614. We do not find it so
in this case. The explicit language of the instrument shows that
it had reference solely to the compromise of the litigation then
pending between appellant and appellee, and to the settlement
of the affairs of their partnership, and nothing else. Language
could not more plainly set forth the purpose of this agreement,
and the utmost stretch of construction could not make it include
the settlement of appellee's liability on the notes mentioned, yet
appellee read this agreement or had it read in his presence. He
then had his attorney to read same, and, notwithstanding its
failure to compass the specific object of including the settlement
of appellee's liability to appellant on account of the notes, as one
of the purposes which appellee contemplated and had in mind at
the time, he nevertheless signed the agreement, without mention-
ing this particular matter to appellant. So, likewise, his attorney
had this specific thing in mind, but failed to mention it specific-
ally to appellant, and failed to suggest a modification of the agree-
ment to cover it, although he says "it was not quite as explicit
as I would have made it, and does not cover the matter entirely."
This certainly tends to prove that, if appellee had this matter in
mind at the signing of the agreement, he failed to mention it
to appellant, and it does not at all contradict appellant's evidence
that "there was no other agreement except that which was in the
writing signed." There was no ground for reformation.

Second. The testimony of appellee and S. R. Allen to the
effect that the agreement was intended to settle the liability of
appellee to appellant on account of the notes was in contradiction,
and not in explanation, of the terms of the written contract be-
tween the parties. It tended to vary those, and thus contravened
the rule which excludes parol evidence. I Gr. Ev. § 275 *et seq.,*
notes; *Colonial & U. S. Mortgage Co.* v. *Jeter,* 71 Ark. 185;
*Moore* v. *Terry,* 66 Ark. 393, and cases cited; *West-Winfree
Tobacco Co.* v. *Waller,* 66 Ark. 445. In the subject-matter of
the written agreement was the compromise of the lawsuit pend-
ing in the Supreme Court and the settlement of the affairs of the
partnership that had existed between them. The payment of the

Gravity Boiler Feeder Company's notes and appellee's contributory share thereof which was due appellant, had not even the remotest connection, under the proof, with the affairs of the partnership between Tillar and Wilson, much less with the lawsuit that was pending in the Supreme Court. Here the entire contract relating to the subject-matter about which the parties were contracting, as indicated by the terms of the instrument, was reduced to writing, and there is no ambiguity about it. The cases of *Weaver* v. *Fletcher,* 27 Ark. 510, and *Kelly* v. *Carter,* 55 Ark. 112, cited by appellee, are not applicable.

The decree is reversed, and judgment will be entered here in favor of appellant for the amount sued for in his complaint with interest. So ordered.