WILSON-WARD COMPANY *v.* FARMERS' UNION GIN COMPANY.

Opinion delivered March 14, 1910.

REFORMATION OF INSTRUMENT—EVIDENCE.—In order to reform a written instrument, on the ground of fraud or mistake, the evidence of such fraud or mistake must be clear, unequivocal and decisive.

Appeal from Craighead Chancery Court, Lake City District; *Edward D. Robertson,* Chancellor; reversed.

*Murphy, Coleman & Lewis,* for appellant.

In order to reform a written contract or instrument, the evidence must be clear, unequivocal and decisive; a mere preponderance is not sufficient. 71 Ark. 616; 5 Mason, 577; 72 Ark. 546; 75 Ark. 75; 79 Ark. 256; 81 Ark. 166; *Id.* 420; 83 Ark. 131; 84 Ark. 349; 85 Ark. 62; 89 Ark. 309.

*Lamb & Caraway,* for appellees.

1. The evidence in this case proves a clear case of fraud and is convincing. 75 Ark. 382; 73 Fed. 574.

2. Oral evidence was admissible to show that appellees signed as directors to bind the Gin Company, and not themselves individually. 91 N. W. 473; 75 Ark. 240.

3. Courts of equity always relieve where there is a mistake induced by the fraudulent conduct of the other party. 42 Ark. 240; 75 Ark. 382; 41 Ark. 494; 89 Ark. 309; 28 Wis. 637; 60 Minn. 491; 64 S. W. 403; 146 Ind. 322; 21 Mont. 277; 24 Ore. 341; 13 Minn. 246; 93 Tex. 334; 10 Vt. 185; 98 Ga. 413; 8 Wheat. (U. S.) 174; 102 U. S. 564; 123 Cal. 681; 21 N. E. 354; 28 N. W. 471.

McCULLOCH, C. J.   This action was instituted at law by the Wilson-Ward Company, a Tennessee corporation, against the Farmers' Union Gin Company, a domestic corporation, and nine other defendants, as joint makers of a promissory note, executed to plaintiff for the sum of   $5,750, dated April 21, 1906, and payable January 1, 1907, with interest from date.   The note, which was exhibited with the complaint, is in the following form, and the signatures appear in the following order:

"$5,750.00.                    Lake City, Ark., April 21, 1906.

"January 1, 1907, after date, we promise to pay to the order of Wilson-Ward Company fifty-seven hundred fifty and no-100 dollars, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of 8 per cent. per annum until paid, payable at the office of the Wilson-Ward Company, Memphis, Tenn.

                    "Farmers' Union Gin Company,
                         "A. E. Thompson, President."

The following names were indorsed on the back of the note:   A. E. Thompson, W. H. Vinson, James E. Bebb, G. W. Clements, Jr., S. R. Bibb, J. P. Thorne, T. Stotts, H. Chamberlain, F. H. Varner.

The defendants, other than the gin company, filed their joint answer and cross complaint, and moved to transfer the case to the chancery court, which was done.   In the answer and cross complaint the defendants deny that they executed the writing set forth in the complaint, either as makers, sureties or indorsers, but admit that they did join in the execution of another note to plaintiff for that amount, and they set forth the following state of facts with reference to the transaction:

"On said April 21, 1906, said gin company was, and for a long time prior thereto had been, insolvent and execution-proof, which fact was well known to the plaintiff and these defendants, and these defendants say that upon the face of said note, and after the same had been signed by said gin company, and below said signature, they subscribed their names to said note, but say that they did not sign the same as indorsers, principals, or sureties, and at the date of the execution of said note, and at and prior to the time of subscribing their names thereto they positively refused to become liable upon said note in any manner; that it was then and there agreed and understood by and

between the plaintiff and these defendants that by subscribing their names to said note they should not become personally, severally or jointly, or in any manner liable for the payment of said note. That they were directors and officers of said gin company; that each and all of them were farmers and inexperienced in the transaction of commercial business, and ignorant of the rules, laws and regulations applicable thereto; that, after said note had been signed by said gin company, the plaintiff, through its agent, officer and representative, Ward, stated and represented to these defendants that the said note signed by said gin company without their signature or signatures would not be a valid and binding obligation, even as against said gin company; that the only manner in which said note could be made a valid and binding note and obligation against said gin company was for each of these defendants as officers and directors of said gin company to subscribe their names to said note, following the signature or name of said gin company thereto; that to so sign said note would and should not to any extent or for any purpose make them personally, severally or jointly liable upon said note in any manner, nor obligate them to pay the same; that by so signing said note they were only obligating the said gin company to pay said note.

"That said Ward at the time said note was executed was skilled and experienced in the transaction of business and familiar with the rules, laws and regulations relating to commercial paper, and the execution thereof by corporate bodies, and knew that the representations so made by him were false; that he made the same for the purpose of inducing and procuring these defendants to subscribe their names to said note not in manner to bind said gin company only, but for the purpose of binding and obligating these defendants to pay said notes.

"That said Ward further stated, at the time they subscribed their names to said note, that neither he nor the plaintiff wanted or desired that any of these defendants should become liable upon said note or obligated to pay the same, and that in subscribing the same these defendants did not believe that they were assuming any personal liability thereon.

"That in signing said note of said gin company, in manner and form as hereinbefore stated, and so as to make them appar-

ently liable as principals and sureties thereon, the same was done by mutual mistake of the plaintiff and said Ward and each and all of these defendants.

"That if, in making the statements and representations hereinbefore stated, the said Ward did not make the same in good faith and was not mistaken, as these defendants and each of them were, as to the effect which their signatures to said note would have upon their liability thereon, then defendants say that the statements and representations of said Ward were made for the deliberate purpose of deceiving, cheating and defrauding these defendants, and each of them."

The prayer of the cross complaint is for reformation of said instrument of writing, so as to correctly express the intention of the parties, and in such manner as to show that the signatures of the individual defendants were given for the sole purpose of making the instrument a valid obligation of said corporation.  On final hearing of the case the chancellor found that "all of the defendants signed the note introduced in evidence; that at the time of signing the same it was agreed and understood, by and between the plaintiff and defendants, that only a note of defendant Farmers' Union Gin Company, as a corporate body, was being executed; that all the individual defendants signed said note only as representatives and directors of said corporation; that it was agreed and understood by and between plaintiff and all the defendants that none of said defendants would or should become personally liable upon said note for the payment thereof, nor incur any personal liability by signing the same, and that said defendants as individuals are not personally liable upon said note; that plaintiff is entitled to recover of and from the defendants, Farmers' Union Gin Company, the amount of the note sued upon and offered in evidence, and that the individual defendants are entitled to the relief prayed for by them."  A decree was rendered in favor of plaintiff against the gin company, and a reformation was decreed as to the other defendants, and as to them the complaint was dismissed for want of equity.  The plaintiff appealed.

The note was executed at Lake City, Ark., and Ward, the president of plaintiff corporation, and all of the defendants except Chamberlain and Varner were present.  Ward came over from Memphis by appointment for the purpose of adjusting

the indebtedness of the gin company, and the others, who were directors in that corporation, met him for that purpose. The gin company owed plaintiff $5,560, or about that amount, on open account for borrowed money, and the account was past due. The gin company was insolvent, and the directors had previously offered to turn over to plaintiff the gin plant and machinery, but the offer was declined.

Ward testified in substance that he met the parties by appointment (except Chamberlain and Varner), and that they agreed to and did execute a note as personal indorsers of the gin company, and that it was executed on a printed form, being the same note exhibited with the complaint. He stated that he advanced to the gin company on that occasion the additional sum of about $200 to enable it to meet some small outstanding obligations, which sum was included in the note. He denied that the defendants indorsed the note for the purpose of making it a valid obligation of the gin company, or that he represented to them that it was necessary for them to do so as directors in order to make it valid, or that he represented to them that no personal liability would result from their indorsement in the manner in which they did.

All of the defendants executed the note the same day except Chamberlain and Varner, who were not present. The note was left for them to sign with the cashier of the bank at Lake City, and they came in separately on subsequent days and executed it, and it was then forwarded to plaintiff at Memphis by mail. Ward never saw Chamberlain or Varner, and they came in to sign the note at the instigation of some of the other defendants.

All of the defendants who met Ward and executed the note, together with other witnesses introduced by them, testified with singular unanimity as to what occurred on that occasion. Each of these defendants swore that the note sued on is not the one they signed, which they said was larger in size, and which all except Chamberlain and Varner signed on the face of the note, following the corporate name of the gin company, and not on the back of the note as the signatures appear on the note in suit. Some of them mention the circumstance of the president misspelling the word "gin" by using the

letter "j" in signing the corporate name, which was laughingly commented on at the time. The note exhibited in the complaint, as will be seen from the above copy, shows the misspelled word.

The defendants state that Ward represented to them that signing the note in that way was necessary in order to make it a binding obligation of the gin company, and that it would not render them personally liable except to the extent of their stock, or "for their *pro rata* as stockholders," as one or two of the witnesses expressed it. They all relate the following circumstance, which they say occurred in connection with the execution of the note: After the note was written out by Ward, one of them objected to a clause therein which they say appeared to make them personally liable, whereupon Ward remarked that he would fix it, and borrowed a pocket knife and made an erasure and wrote something else on it. One of the defendants, Mr. Stotts, so the witnesses say, at first refused to sign the note, but offered to pay his part, and Ward urged him to sign, saying that without his signature "the line would be broken," or that it "would be a broken body."

Now, the learned chancellor found that the defendants signed the identical note sued on, and we think he was correct in so finding. The original note has been brought up for our inspection, and we are clearly convinced that they signed it. They are mistaken in saying that they did not sign the note; they are mistaken in saying that they signed on the face of the note, instead of on the back; and they are mistaken in saying that something was erased from the note or that any change was made in it, for an inspection of the original note shows conclusively that it was not changed by erasure or otherwise. It is unnecessary to determine whether those misstatements were wilfully made or whether they resulted from defective recollection as to the transactions about which the witnesses testified. The question confronting us is whether or not the testimony of these witnesses, faulty as it is on material matters, and given wholly by those who are directly interested in the result of this suit, is sufficient to justify a court of equity in reforming a written instrument so as to change the obligation according to its plain import, or rather to entirely nullify the contract so

far as these defendants are concerned. This court has decided in an unbroken line of cases that, in order to reform a written instrument, the evidence must be "clear, unequivocal and decisive." *McGuigan* v. *Gaines,* 71 Ark. 614; *Goerke* v. *Rodgers,* 75 Ark. 72; *Tillar* v. *Wilson,* 79 Ark. 256; *Davenport* v. *Hudspeth,* 81 Ark. 166; *Marquette Timber Co.* v. *Chas. T. Abeles Co.,* 81 Ark. 420; *Mitchell Mfg. Co.* v. *Kempner,* 84 Ark. 349; *Turner* v. *Todd,* 85 Ark. 62; *Cherry* v. *Brizzolara,* 89 Ark. 309.

This court has, in several of the above cited cases, approved the following statement of the rule of evidence on this subject by Mr. Bishop in his work on Contracts, section 708: "In no case will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear and decisive. Mere preponderance of evidence is not enough; the mistake must appear beyond reasonable controversy."

Measured by this rule, we do not think the evidence in this case is sufficient to justify a decree reforming the contract. Whilst the witnesses for defendants far outnumbered the one witness for plaintiff, yet the testimony of that one witness is reinforced by the writing itself, which is the best evidence of the contract between the parties; and we cannot shut our eyes to the fact that all of the defendant's witnesses—the defendants themselves and the three other witnesses they introduced—have misstated the facts as to material parts of the transaction. Taking the most charitable view of their testimony, that they are honestly mistaken in their recollection as to these matters, still it weakens their testimony to the extent that it does not establish by evidence which is "clear, unequivocal and decisive" the facts essential to a reformation of the written instrument.

It does not appear that the defendants were liable for the debts of the gin company. Yet there is evidence that some of them recognized a liability as stockholders in sums equal to the several amounts of their stock, and one of them offered to pay his part, rather than sign the note. Upon the whole, we are left in doubt, which seems to us to be well founded, as to whether or not the defendants intended, in executing the note as they did, to make themselves liable as joint makers. This being true, we conceive it to be our duty, in accordance with the rule hereinabove announced, to deny the prayer of defendants for reformation.

The decree is therefore reversed with directions to dismiss the cross complaint for want of equity, and to enter a decree against all of the defendants for the amount of plaintiff's debt.