LEGAL SECURITY LIFE INSURANCE CO. *v.*
MRS. JESSIE BROOKS ET AL

5-4479                                                426 S. W. 2d 784

Opinion delivered April 15, 1968
[Rehearing denied May 13, 1968.]

*Perry V. Whitmore,* for appellant.

*Jack Young* and *Jack Sims,* for appellees.

CONLEY BYRD, Justice. Appellant, Legal Security Life Insurance Company, was sued on two counts by Mrs. Jessie Brooks for transactions she had had with American Teachers Life Insurance Association, a fraternal life insurance association, and for transactions with Kelly-Barrett Company, Inc., which held a management contract with American Teachers Life Insurance Association. The record shows that the policies of American Teachers were assumed by Southern United Life Insurance Company; that Southern United was consolidated into American Commerce Life Insurance Company; and that American Commerce Life Insurance Company was merged into appellant Legal Security Life Insurance Company of Dallas, Texas.

The first count in Mrs. Brooks' complaint was on a $5,000 note executed on May 10, 1963. The second count was an equitable garnishment, it being alleged that Kelly-Barrett Company was indebted to Mrs. Brooks in the amount of $11,866.50, for which judgment had been obtained; and it further being alleged that as of October 17, 1963, American Teachers was indebted to Kelly-Barrett in the sum of $12,941.61, which is still due. The allegation then followed that the liabilities of American Teachers were assumed by Southern United, for which appellant Legal Security now stands obligated.

Appellant denies that the contract of Southern United assumed the responsibilities of American Teachers; denies that the $5,000 note is an obligation of American Teachers; and in the alternative pleads fraud in the procurement of the contract between American Teachers and Southern United, and that the obligation of Amer-

ican Teachers to Kelly-Barrett Company was extinguished by an accord and satisfaction. Appellant filed a third-party complaint against J. C. Kelly, J. G. Barrett and Kelly-Barrett Company, Inc., based on an indemnification clause in the contract between Southern United and American Teachers.

From a decree holding appellant liable on both counts and dismissing its third-party complaint against J. C. Kelly (J. G. Barrett and Kelly-Barrett Company, Inc., not having been served), appellant appeals, raising the same issues.

The agreement between Southern United and American Teachers, insofar as applicable, provides:

"(2) Southern United Life Insurance Company further agrees to assume all of the legal liabilities of American Teachers Life Insurance Association including all liabilities under and by virtue of all outstanding policies of insurance issued by said Association. . ."

\* \* \*

"(6) It is agreed and understood that this assumption of all liabilities and all insurance in force by Southern United Life Insurance Company of American Teachers Life Insurance Association is based upon certain warranties and covenants made by the officers of American Teachers Life Insurance Association, and said officers whose names are affixed to this agreement do hereby indemnify the said Southern United Life Insurance Company from any and all claims over and above those herein listed. Specifically, it is agreed that the purported claims of Jo Ann Abel in the amount of $1,000.00, Kate C. Nunn in the amount of $1,250.00, Cities Service in the amount of $474.31, Golden Galaries in the amount of $649.18, and Tom Blackwell of Austin, Texas in the amount of $69.53, are actually

> individual liabilities and are not liabilities of the company for which the company would in any way become liable.''

Obviously the above contract provisions placed Southern United in the position of assuming the liabilities of American Teachers if any were owed, despite the fact that they were not listed on the contract. Therefore we find without merit appellant's contention to the contrary.

In urging that it was not liable on the contract between Southern United and American Teachers, appellant contends that the contract was procured by fraud of American Teachers' officers. They also argue that the trial court erred in excluding certain evidence tending to show fraud. The latter we need not consider, for the record is clear that American Teachers' books showed the obligations of Mrs. Brooks and Kelly-Barrett Company as those of American Teachers. In fact, the Insurance Commissioner had audited the books as of July 31, 1963, and his audit included the obligations as liabilities of American Teachers. The record further reflects that the contract between American Teachers and Southern United was initiated by the Insurance Commissioner, and that agents of Southern United actually examined American Teachers' books and records before entering into the contract. While Southern United's president, Mr. Mendenall, denied any personal knowledge of such obligations, the agents who examined the books were not called to testify. Since Mr. Mendenall stated that he did not rely on the representations made by American Teachers but on examination of the books by Southern United's agents, we hold that appellant failed to show that there was any fraud on the part of American Teachers in the procurement of the contract. *Fausett & Co., Inc.* v. *Bullard*, 217 Ark. 176, 229 S. W. 2d 490 (1950).

The record shows that Mrs. Brooks advanced to

J. C. Kelly $5,000 at the time the preliminary certificate of American Teachers was issued early in 1963. This $5,000 was placed in a bank under the joint control of J. C. Kelly and the insurance commissioner and served as the bond required by Ark. Stat. Ann. § 66-4704(2) (Repl. 1966) for the issuance of the preliminary certificate. American Teachers' permanent certificate to do business was issued on April 30, 1963. Subsequent to the issuance of the permanent certificate the money was withdrawn from the bank and concededly went into the assets of American Teachers. On May 10, 1963, the $5,000 note here involved was executed. The note was on a form designed for use by individuals. On the signature lines first appeared the name of J. G. Barrett and then that of J. C. Kelly. To the right of their signatures appeared "American Teacher Ins Assn—P O 3095, Little Rock, Ark". Both Mrs. Brooks and J. C. Kelly testified that the note was an obligation of American Teachers. There is no testimony to the contrary, except for the appearance of the note, and we hold that under the record this was sufficient to establish the note as an obligation of American Teachers—particularly since the Insurance Commissioner's audit so listed it as of July 31.

As a further defense to liability on the note, appellant contends that American Teachers, being a fraternal benefit society, had no authority to borrow money and thus its conduct in making the obligation was ultra vires. In view of Ark. Stat. Ann. § 66-4704(6) Repl. 1966), we find this contention to be without merit. That section specifically provides that such corporations would have such powers "as are necessary and incidental to carrying into effect the objects and purposes of the society," and it would be unduly restrictive of such a society to hold that it could not borrow money. To hold otherwise would prevent such a society from building its own office building.

The issue on equitable garnishment resolves itself

into one of accord and satisfaction. It is conceded that if American Teachers is not presently obligated to Kelly-Barrett, Mrs. Brooks' equitable garnishment must fail. Mr. Kelly testified without equivocation that at the time of the contract and the assumption of liabilities by Southern United on October 17, 1963, American Teachers was not personally indebted either to him or to J. G. Barrett. He stated that the obligation was owed to Kelly-Barrett Company, Inc. Mr. Mendenall testified, without contradiction, that Southern United's check No. 1654 for $250, dated October 16, 1963, and its check No. 1655 for $902, dated October 17, 1963, were given in complete satisfaction of all obligations owed by American Teachers to Kelly-Barrett Company, Inc.

The record also shows that Kelly-Barrett was incorporated for the sole purpose of managing American Teachers; that it ceased to do business about August 31, 1963, when negotiations were started for the reinsurance with Southern United; and that, except for the obligation owed by American Teachers to Kelly-Barrett, it had no assets as of October 17, 1963.

Kelly was president of American Teachers and Barrett was vice president at the time the October 17, 1963, contract with Southern United was executed. The record is not clear as to what Barrett's status was with Kelly-Barrett Company, (it appearing that he had resigned from its board of directors), but it does show that Kelly was the principal officer of Kelly-Barrett Company at that time.

Under the circumstances the payments by Southern United to J. C. Kelly and to J. C. Kelly and J. G. Barrett were obviously sufficient to constitute an accord and satisfaction. *Pettigrew Machine Co.* v. *Harmon*, 45 Ark. 290 (1885).

To refute the accord and satisfaction argument, Mrs. Brooks points to the fact that on check No. 1655,

made payable to Glen Barrett and J. C. Kelly in the amount of $902, there was this notation:

"Full and final settlement for any claims on American Farm Life Insurance Association and American Teachers Life Insurance Association."

From this notation Mrs. Brooks argues that parol evidence such as Mr. Mendenall's was insufficient to contradict the notation on the check. *Tillar* v. *Wilson,* 79 Ark. 266, 96 S. W. 381 (1906). We hold Mrs. Brooks' contention to be without merit, for the clear and uncontradicted proof shows that no obligation was personally owed to J. C. Kelly and Glen Barrett; and under the holding in *Tillar* v. *Wilson, supra,* it is specifically recognized that clear, cogent and convincing evidence can be introduced to contradict a written instrument when properly pleaded. We find that the pleadings in this case were sufficient to raise the issue. Furthermore, Mrs. Brooks' argument overlooks check No. 1654 for $250, made payable to J. C. Kelly, without any notation.

The $5,000 note above was not on the itemized list of obligations attached to the contract between American Teachers and Southern United. Under the facts here, paragraph 6 above clearly shows that J. C. Kelly and J. G. Barrett agreed to indemnify Southern United for any such obligations not appearing on the list. Therefore we hold that the trial court was in error in not awarding judgment against J. C. Kelly for the $5,000 obligation for which Mrs. Brooks is entitled to judgment against appellant Legal Security Life Insurance Company. Appellee Kelly argues that appellant has waived this argument by not arguing it in this court. We disagree, and hold that appellant is entitled to judgment against Kelly for $5,000.

Therefore, the trial court's judgment against appellant Legal Security Life Insurance Company upon the equitable garnishment is reversed and dismissed; its

judgment against appellant and in favor of Mrs. Brooks for the $5,000 is affirmed; and its dismissal of appellant's claim of indemnity against appellee J. C. Kelly is reversed with directions that judgment be entered for $5,000.