McGUIGAN *v*. GAINES.

Opinion delivered November 14, 1903.

1. REFORMATION—MISTAKE.—Although a court of equity may reform a written instrument where, on account of a mutual mistake, it does not reflect the intention of the parties, and may do so where the mistake is proved by parol evidence only, the relief will be granted only where the proof is clear, unequivocal and decisive. (Page 616.)

2. SAME—PRACTICE.—To entitle a party to reform a deed on the ground of mistake merely, it must be clearly shown that the mistake was common to both parties, and that the deed as executed expressed the contract as understood by neither. (Page 619.)

3. MARRIED WOMAN—LIABILITY ON COVENANTS.—A married woman, having full power to sell, convey and contract in reference to her separate property, is bound by the covenants contained in her deeds thereto. (Page 619.)

Appeal from Garland Chancery Court.

A. CURL, Special Chancellor.

Reversed.

On the 9th day of February, 1891, W. H. Gaines and others executed and delivered to Wm. McGuigan a deed conveying to him certain land in Garland county, for which land McGuigan paid the sum of $4,600. The land conveyed is described in the deed as follows, to-wit: "The southwest quarter of the northwest quarter, the southwest fractional quarter, the south half of the southeast quarter, and the northwest quarter of the southeast quarter, all of section 18 in township three (3) south, range eighteen west, containing 317.41 acres, more or less, except, however, the right of way of the Hot Springs railroad and the following described parcel of land in the said northeast quarter of the southeast quarter of said section eighteen, used as a graveyard, to-wit." Then follows a particular description of the graveyard tract, which it is unnecessary to set out here. The land, as described in the deed, was divided by Gulpha Creek. From eight to fourteen acres of the land lay west of the creek, while the remainder lay east of it. But this land west of the creek did not belong to the parties who conveyed it to McGuigan, for it had been sold to one Nickles some twenty or thirty years before the deed to McGuigan was executed.

In 1894 McGuigan brought this action in the circuit court to recover damages for a breach of the covenants contained in his deed on account of the fact that plaintiffs did not own the land described in the deed which lay west of Gulpha Creek. To this complaint the defendants filed an answer and cross-complaint, in which they alleged that they informed plaintiff at the time of the purchase and before the delivery of the deed that they did not own the land west of Gulpha Creek; that the same had been sold and conveyed to Nickles by their ancestor many years before, and that they did not intend to sell or convey that land, and that the plaintiff well knew that this was so, and that it was included in the deed by mistake of the draughtsman who drew the deed. There does not appear to have been any reply filed to this cross-complaint, but the allegations thereof were treated as denied, and the case was transferred to the chancery court, and heard and decided on those issues.

The special chancellor who decided the case found that the land west of Gulpha Creek was included in the deed by mistake, and that the deed in this respect did not express the intention of

the parties. He thereupon rendered a decree reforming the deed, from which decree plaintiff appealed.

*Wood & Henderson,* for appellant.

A court of equity is not authorized to find that a contract does not express the intention of the parties by reason of a mistake of the draughtsman, unless the evidence is clear. 14 Ark. 482; 50 Ark. 179; 66 Ark. 155; 15 Am. & Eng. Enc. Law, 649; 98 U. S. 79, 85; 53 N. E. 797, 87; 28 S. E. 798; 48 S. W. 700; 44 S. W. 728. The mistake must be mutual. 15 Am. & Eng. Enc. Law, 628; 18 Am. & Eng. Enc. Pl., 781; 50 Ark. 179; 26 Ark. 28. A contract written as intended by the parties will not be reformed, although it does not have the intended legal effect. 46 Ark. 167; 49 Ark. 425; 56 Ark. 320; 41 Ark. 495.

*Greaves & Martin,* for appellees.

The decision of the court comes within the rule laid down in 50 Ark. 179. The covenants of warranty were not part of the conveyance, but separate contracts. 44 Ark. 153. Married women are not held on such covenants. 33 Ark. 640.

Riddick, J., (after stating the facts). This action was brought by the plaintiff to recover damages for breach of the covenants contained in his deed executed to him by the defendants. The defendants admit the execution of the deed, but allege that by the mistake of the attorney who drew the deed he failed to except from the conveyance certain land west of Gulpha Creek mentioned in the statement of facts, which defendants did not own, and for the loss of which plaintiff now asks damages. They allege that plaintiff well knew that defendants did not intend to convey this land west of the creek, and they therefore ask that the deed be reformed so as to conform to the intention of the parties thereto.

The question involved in the case is not so much one of law as it is one of fact. The party alleging the mistake has undertaken to prove it by parol evidence only. The law bearing on that point is well settled. There is no doubt that a court of equity may reform a written instrument where on account of mutual mistake the instrument does not reflect the intention of the parties thereto, and it may do so although the mistake be proved by parol evidence only. But in such cases, where the court is asked to reform a written contract against the will of one of the parties thereto, a court must, as

a matter of common prudence, proceed with caution, and will decree a reformation only where the evidence shows clearly and conclusively that justice requires it. "In no case," says Mr. Bishop, "will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough. The mistake must appear beyond reasonable controversy." Bishop on Contracts, § 708.

These words of the author are well supported by the adjudged cases. But, though the mistake must be clearly proved, it does not follow that the courts must refuse relief in all cases where there is conflict in the testimony or evidence, for it often happens that, notwithstanding such conflict, the facts of a case may be clearly and decisively proved. A recent decision by the Court of Appeals of New York has gone even further, and holds that relief may be granted even though the facts be not established beyond a reasonable doubt. *Southard* v. *Curley,* 134 N. Y. 148, 31 N. E. 330. But this case seems to be opposed at least to the reasoning of many other cases, and there is room for doubt as to whether it is a sound exposition of the law outside of the state of New York. Take, for instance, the statement of Judge Story in *United States* v. *Monroe,* 5 Mason, 577. "In cases," he said, "of asserted mistakes in written instruments, it is not denied that a court of equity may reform the instrument, but such a court is very slow to exercise such an authority, and it requires the clearest and strongest evidence to establish the mistake. It is not sufficient that there be some reason to presume a mistake; the evidence must be clear, unequivocal, and decisive."

This statement of the law by Judge Story has been frequently quoted and approved by the courts. It has been twice approved by this court. Now, while Judge Story does not expressly state that the mistake must be established beyond a reasonable doubt, he uses language which carries the same idea. He says that a court of equity in such cases requires "the clearest and strongest evidence" to establish the mistake, that the evidence must be "clear, unequivocal, and decisive." But how can this be so if the evidence is such as to leave on the mind of the chancellor a reasonable doubt as to whether a mistake is proved or not?

But, waiving that point, the decisions are quite unanimous in requiring that the mistake should be clearly established. The reason that underlies these decisions is a very plain one, for, if written

contracts could be overturned by a mere preponderance of parol evidence, then they would be of little more value than a parol contract. There is a further reason in cases affecting deeds and other contracts concerning conveyances of land. The law, to obviate the confusion and uncertainty arising from trusting such matters entirely to the memory of witnesses, requires that such contracts shall be put in writing in order to be binding. But the beneficial effect of these statutes would be to a large extent nullified if when such contracts are reduced to writing they could be easily set aside on parol evidence. The reasons which forbid that a written contract should be overturned by a mere preponderance of parol evidence are so clear and convincing that there is on that point no conflict in the decisions. *Rector* v. *Collins,* 46 Ark. 167; *Carnall* v. *Wilson,* 14 Ark. 167; *Northwestern Ins. Co.* v. *Wilson,* 103 U. S. 549; 2 Pomeroy, Equity Jurisprudence, § 859; 2 Warvelle on Vendors (2d ed.) §§ 779-781.

In order to prove their allegation that there was a mistake in the deed delivered by them to the plaintiff, the defendants have introduced the testimony of four witnesses. Two of these witnesses— Mr. Williamson and his wife—are interested and parties to the suit, and two of them are not interested in the action. Opposed to the testimony of these witnesses is the testimony of the plaintiff, his wife and his two daughters. The wife was competent as a witness to some of the facts, she having acted to some extent as an agent of her husband in making the purchase. All of these four persons testify to facts which tend to show that, so far as plaintiff was concerned, there was no mistake, and that the deed reflects the contract as plaintiff understood it. The testimony of the witnesses for plaintiff is supported by the testimony of his attorney, who drew the deed, and who, being called to the stand by the defendants, testified that the deed was drawn in accordance with the agreement between the parties as he understood it; that he knew nothing about the contention of defendants that the land west of the creek should have been excluded until this controversy arose.

The deed appears to have been executed with some care, and it expressly excepts from the conveyance a graveyard containing about an acre of land, and also the right of way of a railroad which had been built across the land. Now, the question occurs, why, if these parties deemed it necessary to make an express exception in the deed on account of the graveyard and the right of way, should they deem it unnecessary to do so in the case of the land west of the

creek, a tract many times larger than the graveyard tract? One of the defendants has undertaken to answer this by saying that he did not know that the southwest quarter of section eighteen, in which the land west of the creek was located, was a fractional quarter, as shown by the government survey, and that he supposed that the word "fractional" that appeared in the deed descriptive of that quarter section referred to the exclusion of this tract which he intended to except from the conveyance. As these parties were probably not learned in the law, this statement may be true, but the explanation is not altogether satisfactory, for he says that he informed plaintiff of the fact that the tract beyond the creek must be excepted, and that he did this in the office of the attorney who drew the deed. Now, this attorney testified that he knew nothing of the intended exception, nor does the defendant, or either of them, assert that he was informed of the fact that this land was to be excepted. It is plain that defendants, or some one for them, informed the draughtsman that the graveyard tract and the right of way were to be excepted, but it seems that they made no mention to him about the exception of the much larger tract beyond the creek. The fact that his attention was not called to it tends to contradict the testimony of the defendants that this matter was discussed in his office about the time the deed was being prepared.

We have not undertaken to set out all the testimony, for it is unnecessary to do so. Some of it goes strongly to support the contention of defendants. Indeed, we are inclined to believe that the weight of evidence lies on that side, but as before stated that is not sufficient.

It is not claimed that any fraud was perpetrated in this case, and to entitle the parties to reform a deed on the ground of mistake merely it must be clearly shown that the mistake was common to both parties, and that the deed as executed expresses the contract as understood by neither. 18 Enc. Plead. & Prac. 781. We are not convinced that this is true in this case. The state of the evidence is such as to leave us in grave doubt about it, and after a consideration of it we are of the opinion that the reformation asked by defendants should be denied.

Some of the defendants are married women, and the further contention is made for them that a married woman is not bound by the covenants in her deed. This was the rule at common law, and may still apply where the land conveyed belongs to the husband and the wife joins in the deed merely for the purpose of barring dower and

homestead rights. But, under our statute, the wife has now full power to sell, convey and contract in reference to her separate property, and we see no reason why an exception should be made in respect to covenants in her deeds. To hold that she could not make covenants in respect to the title of real estate sold by her would to some extent embarrass her in selling it. We find in the statute nothing that justifies such an exception, and we are therefore of the opinion that this contention is not well taken. *Sidway* v. *Nichol,* 62 Ark. 146, 34 S. W. 529; 8 Am. & Eng. Enc. Law, 163.

This action was transferred to the chancery court on motion of the defendants, without objection from plaintiffs, and there is now no reason why it should not be finally disposed of in that court. The value of the land for the loss of which plaintiff asks damages is small, and in our opinion does not exceed one hundred dollars. The decree will be reversed, and the cause remanded with an order that a decree be rendered in favor of plaintiffs for that amount.