GOERKE *v.* RODGERS.

Opinion delivered April 15, 1905.

1. REFORMATION—SUFFICIENCY OF EVIDENCE.—Equity will not overturn a written instrument on the ground of mistake if the evidence tending to establish the mistake was of no greater weight than that tending to disprove the mistake; the rule being that the evidence to overcome the writing must be clear, unequivocal and decisive. Mc*Guigan v. Gaines,* 71 Ark. 614, followed. (Page 95.)

2. APPEAL—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—As trials in chancery appeals are *de novo,* the finding of facts of the chancellor is persuasive merely. (Page 75.)

Appeal from Lee Chancery Court.

EDWARD D. ROBERTSON, Judge.

Reversed.

*P. D. McCulloch,* for appellant.

The written contract must govern. 71 Ark. 614; 66 Ark. 155; 24 Am. & Eng. Enc. Law, 650. One who asks a court of equity to reform a writing must show that he has been free from carelessness in the matter. 70 Ark. 512; 24 Am. & Eng. Enc. Law, 656; 162 Mo. 424; 93 Va. 349.

*N. W. Norton,* for appellee.

A chancellor's findings will not be reversed unless they are against the preponderance of the evidence. 44 Ark. 216; 71 Ark. 614.

HILL, C. J. Rodgers owned a tract of land in Lee County, of which 2,000 acres were in cultivation, and 3,000 in timber. Goerke was a lumberman, and, in pursuance of a verbal agreement selling him the timber and specifying the time in which it was to be cut, went upon the land and commenced cutting. Disagreements arose, and Rodgers sued Goerke, and attached his outfit, and claimed the contract was terminated. In settlement of their differences, they entered into a written contract on April 5, 1902. The contract set forth with particularity the terms of

the purchase of the timber, the time for its completion, and the manner of its execution, and detailed the respective rights and obligations of the parties, and was made retrospective to cover the operations under the former contract, and contained matters not theretofore embraced. In the verbal contract there seems to have been an understanding that Rodgers could designate twelve months in advance certain lands he wanted to put in cultivation, and Goerke would then have to take the timber from such tract, and turn the land over to Rodgers for cultivation. The term of the verbal contract was five years, and in the written contract it is provided that if at the end of five years Goerke has a sawmill on the land cutting timber he shall have two more years to cut the timber. On January 5, 1903, Rodgers brought suit in chancery to reform the written contract of April 5, 1902, by the insertion therein of the following clause: "It is expressly agreed and understood that, by giving twelve months' notice to G. A. Goerke or his assigns, H. P. Rodgers or his assigns may enter upon any lands embraced in this contract, not exceeding 320 acres during any one year, and cut and deaden the timber preparatory to cultivation. G. A. Goerke agrees for himself and his assigns that he will take the timber from the lands above mentioned within the time of such notice, towit: twelve months, and after the expiration of said twelve months' notice then H. P. Rodgers or his assigns may cut and deaden timber, and the right of said G. A. Goerke and his assigns to the timber on that part of the land terminates."

Rodgers alleged this clause was mutually agreed upon, and was omitted from the contract by inadvertence in drafting. Goerke denied this, and alleged it was not mutually agreed to, but purposely omitted from the contract. This issue was tried before the chancellor, who found in favor of Rodgers, and decreed accordingly. Rodgers sustained his allegations with his emphatic testimony to the effect that this clause was positively agreed to, and it was a mere oversight that it was not incorporated in the contract, and he thought it was in the contract until long afterwards, when he discovered the omission. He explains the importance of it to his plan of improving and clearing his plantation, and he is supported in this by his manager, who testified that the original verbal contract had substantially the

same clause and for the same purpose. This evidence, however, cannot be taken as a corroboration of Rodgers's testimony as to the final draft, other than to show Rodgers's desire to have such a clause in a contract selling the timber. On the actual issue before the court Rodgers is corroborated alone by his attorney, who was almost equally positive that the clause had been agreed to and incorporated in the contract. On the other hand, Goerke testified positively that the clause was not agreed to, that it was presented in a pencil memorandum with various other clauses, and objected to by him, and dropped from consideration. He explains fully the disadvantage to him in having the clause inserted. Preetorious, who was interested with Goerke to the extent of guarantying his payments, and otherwise, was present the latter part of the negotiations culminating in the contract, and participated in them. In fact, the negotiations awaited his arrival for consummation. He says the clause was objectionable to him for reasons explained by him, and he would have insisted on its omission, but when brought up Goerke promptly objected to it, and nothing further was said about it, and the final draft agreed upon without it. Thus it is seen that the issue is squarely between two witnesses on one side, and two on the other. Three of them appear to be business men of means and large interests, and the other is a lawyer of extensive practice in this court, who enjoys the confidence and esteem of the court. There is not the slightest suspicion on the evidence of any witness, and each gives a wholly consistent and probable account of the transaction. They are all interested, more or less, but the very interest of men of high character in the subject-matter often makes their testimony more weighty, as showing their attention is focussed on the matter in controversy. In this case there was a pencil memorandum of the contract as proposed by Rodgers submitted to Goerke, and it was considered clause by clause during the negotiations, and finally by modifications and mutual concessions the contract was evolved. It is possible that the preparation and insertion of the clause in the pencil memoranda may be confused in the memory of Rodgers and his attorney with the preparation and insertion of it in the final draft; but that is conjecture, and the law does not leave the settlement of such questions to conjecture. "The reasons which forbid that a written contract should

be overturned by a mere preponderance of parol evidence are so clear and convincing that there is on that point no conflict in the decisions." *McGuigan* v. *Gaines,* 71 Ark. 614. This contract was carefully drawn, it contained thirteen clauses, the subject-matter was large, and the period long. It was a matter of great importance to both parties, and the clause in question was an important one to both parties in the execution of the contract, so important that after its omission was discovered Rodgers offered, and Goerke declined, an offer of over $1,000 for its insertion. The parties were dealing at arm's length, and each had his adviser, one his attorney and the other his business associate. Several days were consumed in the negotiations, and finally by mutual concessions an elaborate written contract was evolved and executed. The court cannot establish a precedent of overcoming such a deliberately written instrument on testimony n equipoise, where there is no impeachment of the witnesses or contradictions other than by the other side. Finding absolutely nothing to reflect on the honesty and veracity of Rodgers and his attorney, and according to their testimony the utmost credit as honestly and truthfully given, it places their memory of the transaction above the written evidence of it, when the written evidence is supported by the memory of two witnesses equally positive and against whose testimony nothing is brought to bear other than the memory of the other two parties. It is to avoid such honest misunderstandings, as well as to prevent advantage by unscrupulous parties, that the law requires that the evidence to overcome the written memorial "must be clear, unequivocal and decisive." *McGuigan* v. *Gaines, supra.*

The appellee insists that the finding of the chancellor should not be reversed unless against the decided weight of evidence. There are some early decisions to that effect, but trials in chancery appeals are *de novo* in this court, and the finding of the chancellor only persuasive, and that has been the rule in this court for many years. That, however, is hardly important in this case, for here the question is not one of a mere preponderance, for the law requires of the party seeking to overcome the written evidence more than a mere preponderance, and requires the clearest and strongest evidence to establish the mutual mistake.

The appellee failed to satisfy the requirements of equity jurisprudence in this case to obtain the relief sought, and the judgment is reversed, and the cause dismissed.