## McNutt *v.* McNutt.

Opinion delivered June 10, 1905.

TRUST EX MALEFICIO—EVIDENCE TO PROVE.—In order to justify a court of equity in imposing a trust *ex maleficio* upon real property, and changing the beneficial title thereto from defendant to plaintiffs upon merely parol evidence of fraud, the fraud should be clearly established; a mere preponderance of the evidence being insufficient.

Appeal from Miller Chancery Court.

JAMES D. SHAVER, Judge.

Reversed.

*Scott & Head,* for appellant.

The deposition of Rachel McNutt should have been stricken out. 53 Ark. 279; 55 Ark. 235. A court of equity will not rescind a contract on the ground of fraud, unless the fraud is clearly established. 8 How. 134; 37 Ark. 145; 38 Ark. 419; 55 Ark. 148; 94 U. S. 207; 16 Atl. 640. The findings of the chancellor are against the preponderance of the evidence. 43 Ark. 307; 50 Ark. 185; 34 Ark. 112.

*William F. Kirby,* for appellees.

The findings of the chancellor are supported by a preponderance of the evidence, and are conclusive. 67 Ark. 287; 68 Ark. 134, 314; 71 Ark. 605. The deed should have been canceled. 33 Ark. 762; 67 Ark. 527. The decree is equitable. 54 Ark. 499; 63 Ark. 376; 51 Ark. 188, 530; 48 Ark. 17.

RIDDICK, J. This is an action by a son and a daughter against their mother to cancel a deed executed by them conveying to her two lots in the city of Texarkana and the improvements thereon, on the ground that the conveyance was procured through fraud. The facts are that one A. B. McNutt purchased the two lots mentioned, paying $200 cash and agreeing to pay a balance of $600 in installments of $25 each. His wife, Mrs. Margaret A. McNutt, the defendant in this action, claims that she paid all of the purchase money except the $200 paid by her husband in cash. By the consent of herself and her husband, their vendor executed a deed conveying the lots to their two children, who are the plaintiffs in this case. After these children became of age and were married, they executed a deed conveying these lots to the defendant, their mother. The deed recites that it was executed "for and in consideration of the sum of $5 and other good and valuable considerations paid by Margaret A. McNutt." But the plaintiffs and also the wife of one of the plaintiffs testify that the defendant procured the execution of the deed by telling her son and daughter that she desired to sell the property to Mrs. Preston, who, she said, was willing to pay $1,500 for it, but that Mrs. Preston would not purchase from

the plaintiffs, but insisted upon having a conveyance from defendant. The defendant then proposed that plaintiffs convey the property to her, promising that she would convey it to Mrs. Preston and divide the purchase price between the plaintiffs. They say that they made the conveyance, but that the defendant refused to carry out her part of the contract, and still retains the property, in fraud of their rights.

The defendant answered the complaint, and denied that she had procured the property as alleged in the complaint. But she states that, she having paid a large part of the purchase money, the plaintiffs, her children, when they became of age, as a matter of justice, executed the deed conveying the lots to her for love and affection, in order that she might have a home, and that she is the owner thereof, both in law and equity.

The chancellor found the issues in favor of the plaintiffs, and the question presented by the appeal from his judgment is mainly a question of fact. But this is an effort to have a court of equity impose a trust *ex maleficio* upon real property, and to change the beneficial title to such property by parol evidence from the defendants to plaintiffs. In order to justify a court in granting such relief, the fraud alleged should be clearly established. A mere preponderance of the evidence is not sufficient to obtain such relief. *McGuigan* v. *Gaines,* 71 Ark. 614; *Ammonette* v. *Black,* 73 Ark. 310; *Tillar* v. *Henry,* 75 Ark. 446. Now, the plaintiffs do testify positively that their mother obtained the property in the manner alleged, but there are undisputed facts in the case which cast a suspicion upon the justness of their claim. This deed that they say was procured by fraud was executed on the 11th of June, 1900. As Mrs. Preston lived in Texarkana, near where they lived, they must have discovered the fraud of their mother only a short time afterward, but it was nearly three years afterward before they brought this action to set the deed aside. There is nothing to show that the daughter ever asked her mother to perform her part of the contract or pay her for the lots. The son, A. B. McNutt, testified that he did ask his mother two or three times to sell the lots and pay him his part of the proceeds, but she denies that he did so. The testimony and his own letters

read in evidence show that he was poor, and had to borrow money from his parents. In several of these letters he asks them for financial assistance, but in none of them does he mention the fact that his mother owed him anything for this land. On the contrary, in several of these letters he refers to the lots as her property, and offers to rent one of them from her if she will put up a small house on it. These letters written by plaintiff A. B. McNutt commence only a month or two after the deed was executed by plaintiffs to their mother, and continue at intervals for a year or two. If this mother had perpetrated such a gross fraud upon him in reference to this deed, it is remarkably strange that, though he several times refers to this property in his letters as his mother's property, he never refers to or hints at the fraud which he now testifies that she committed in reference thereto. These letters, it seems to us, completely overthrow the testimony of this plaintiff in reference to the acts of his mother, for it is inconceivable that she should have committed such a fraud, and that he should never have mentioned it in letters which refer to the property.

The parties who testify to this fraud are all interested parties, and one of them the wife of a plaintiff, and for that reason of doubtful competency as a witness. But it is unnecessary to discuss that point, for it seems to us that, considering all the evidence, it does not make out a case clear enough to justify the court in granting the relief asked and in changing the title to this land.

On the whole case, we are of the opinion that the chancellor erred in his decree in favor of plaintiffs. The judgment will therefore be reversed, and the cause remanded with an order to dismiss the complaint for want of equity, at the costs of the plaintiffs. It is so ordered.