MARQUETTE TIMBER COMPANY v. CHAS. T. ABELES COMPANY.

Opinion delivered January 21, 1907.

REFORMATION—SUFFICIENCY OF EVIDENCE.—To justify reformation of a written instrument on the ground of an alleged mistake, the proof of such mistake must be established, not merely by a preponderance of the evidence, but by proof that is clear, unequivocal and decisive.

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*C. P. Harnwell,* for appellant.

1. From the testimony it is unquestionable that both Abeles and Savage knew and understood that the property conveyed by the quitclaim deed did not contain one-half of the land in question. · It is clear that there was not only no mutual mistake, but no mistake on either side, it being known and understood that Abeles was getting only what was described by metes and bounds. Cases relied on by appellee, 31 Ark. 252, and others, do not apply, the decisions being based upon mutual mistake.

2. The contention that appellant had notice of Abeles's contention because he was in possession. is not borne out by the proof, which clearly shows that he was only in possession by leave of appellant.

3. As against Oscar Davis, trustee, no reformation could be had, as it is conceded that he had no notice of Abeles's contention; besides, the deed from Frank Savage to appellant was a warranty deed.

4. Appellee can not attack the validity of the incorporation of the Marquette Timber Company. That is the province of the State in a direct proceeding. One dealing with even an ostensible corporation, as such, is not permitted to deny its corporate capacity. 58 Ark. 103; 47 Ark. 269; *Whipple* v. *Tuxworth, ante* p. 391.

*Morris M. Cohn,* for appellee.

1. The testimony shows that the conveyance of one-half of the tract was in contemplation of the parties; that appellee paid for the north half of the tract and received a deed therefor supposed to describe the north half according to the description based upon the line fixed by the surveyor. Upon discovery, a few days later, of the error, the attention of Frank Savage was called to it, and he agreed to look into it, and, if true, to remedy it.

2. The fact that parol evidence has to be introduced in connection with plats and writings does not militate against the reformation of an instrument. 69 Ark. 406; 71 Ark. 614; 75 Ark. 524; *Id.* 382; 76 Ark. 189. Mistakes of parties in discrib-

ing lands intended to be conveyed will be corrected, and the conveyances reformed. 48 Ark. 498; 49 Ark. 397; 50 Ark. 179; 51 Ark. 390; 31 Ark. 252; 34 Ark. 85. In none of the above cases was the mutuality of the mistake conceded, but the decisions were based upon the theory that an honest person ought, in the light of the evidence, to have conceded the mistake. See, also, 50 Ark. 179; 60 Ark. 304; 61 Ark. 123.

3. Appellee, being in possession of the strip in controversy long prior to the conveyances to Marquette Timber Company and to Oscar Davis, trustee, which is alleged in the complaint and not denied in the answer, is entitled to reformation as against both; and this is true even if otherwise they were purchasers for value without notice. 76 Ark. 25; 33 Ark. 465; 34 Ark. 533; 37 Ark. 195; 47 Ark. 533. The deed from Frank Savage to Marquette Timber Company being a quitclaim deed, that company and its privies in estate were put on notice. 50 Ark. 322; 34 Ark. 590; 11 Wall. 217; 27 Fed. 160. And by his deed of trust Davis as trustee was put on notice that the timber company held under a quitclaim deed. A vendee is affected with notice of recitals in the vendor's deed. 29 Ark. 650; 43 Ark. 464; 37 Ark. 571; 50 Ark. 322. And a purchaser by quitclaim deed is not entitled to protection as a purchaser for value without notice. *Cases supra;* 12 Wall. 323.

4. The attempted organization of the Marquette Timber Company was void. 1 Thompson, Corp. § § 55, 56. See, also, 5 *Id.* § 5803.

McCULLOCH, J. On April 6, 1903, Frank F. Savage purchased at a sale under decree of the chancery court an irregularly shaped tract of land, containing 18 acres, in Pulaski County near the city of Little Rock, the purchase price being $13,500, which was paid in cash. About the time the purchase was made Savage and Charles T. Abeles, acting for appellee company, entered into negotiations for purchase of a portion of said tract by said company, and on April 15, 1903, Savage conveyed to said company the north part of the tract, describing it by metes and bounds, for the sum of $5,250 cash paid. Soon afterwards he sold and conveyed the remainder of the tract to appellant, Marquette Timber Company, a corporation in which he was a stockholder. The part conveyed to appellee was not quite half of the tract

purchased by Savage at the judicial sale. If the description in appellee's deed had placed the south line of the tract conveyed 15 feet further south, the deed would have embraced one-half of the whole tract purchased by Savage—the north half.

Appellee instituted this suit in equity for reformation of the deed, alleging that Savage sold and agreed to convey to appellee one half of the land he had purchased, but that, on account of mistake in measurement, the deed failed to properly describe the tract intended to be conveyed. The suit was originally brought against Savage and the Marquette Timber Company and a mortgagee of the latter. Savage died after the suit was brought, and before any testimony was taken.

The defendant answered, denying that any mistake was made in describing the land intended to be conveyed, and alleging that appellant, Marquette Timber Company, had purchased the remainder of the tract and paid for same without any knowledge or information concerning any claim of appellee thereto.

The controversy is over the strip 15 feet wide running through the center of the original tract. Appellee says it was intended to be embraced in its deed, and that the deed should be reformed so as to include it.

The evidence concerning the transactions between the parties is furnished principally by Charles T. Abeles, the president of appellee company, and S. M. Savage, one of the officers of appellant company. The latter was a brother of Frank F. Savage, and claims to have been present when the transactions between his brother and Abeles occurred. These witnesses agree upon the point that Abeles wanted half of the tract, but they differ as to the agreement. Abeles says that Frank F. Savage agreed to sell to him for his company the north half of the tract, and to convey it to him as soon as they could measure it and ascertain the correct description. Savage denies this. He says that it had ben previously understood that the Marquette Timber Company should have the whole tract for a mill plant, and that his brother Frank would not agree for Abeles to have the north half of it until they could have it measured and the boundary line ascertained, so as to determine whether the sale of that much of it would interfere with the plans of the timber company.

They agreed upon a surveyor to run the lines dividing the north half from the south half, and to furnish a description of the north half. The surveyor did the work, but made a mistake in fixing the dividing line between the two halves—placing the line 15 feet too far north. He marked off the line, but told both parties at the time (Savage and Abeles) that he was doubtful whether or not it was correct. Notwithstanding this admonition, the conveyance from Savage to appellee company was made according to that description, and Abeles accepted it and paid the price. The witnesses again disagree radically as to what then transpired between them. Abeles says that Savage agreed, when he executed the deed, to correct any mistake in the description that might be subsequently ascertained. S. M. Savage says that nothing of the kind occurred; that the deed correctly described all the land intended to be conveyed; that no more was agreed to be conveyed than the part described in the deed; and that the delivery of the deed and payment of the price finally closed the transactions between them. He testifies further that his brother did not definitely agree to let Abeles have the land until the surveyor ran the line and established the boundary, and that then, after it was seen that the part to be conveyed to Abeles would not interfere with the plant of the Marquette Timber Company, and would leave the quantity of land desired by that company for its mill plant, he agreed to make the conveyance. About a week later the surveyor discovered his mistake in the measurement and reported it to Mr. Abeles, and the latter subsequently reported it to Savage and demanded a correction of the description in the deed.

This is substantially all the testimony, and upon it the chancellor decreed a reformation of the deed.

The testimony of the surveyor, whose description was taken, sheds little light upon the point in controversy, as he only testified to the effect that he was instructed to divide the tract equally, the north half from the south half, and establish the line, and that he made the mistake of 15 feet in fixing the division line. Neither party disputes the truth of his testimony. Appellee's right of reformation depends entirely upon the unsupported testimony of Mr. Abeles, its president; and upon every material point his testimony was contradicted by that of Mr. Savage, who

is equally interested on the side of appellants. Upon this state of the proof ought a court of equity to reform a deed of conveyance executed, delivered and accepted by the respective parties thereto? If so, the written engagements of contracting parties would have little sanctity. The most that can be urged in favor of appellee's side of the controversy is that the testimony, at the crucial points, is evenly balanced. Nor can that much be claimed for it when it is noted in connection with the conflict between the testimony of Abeles and Savage, that the former accepted a conveyance containing a description which, according to his claim, was then of doubtful correctness, paid the purchase price and filed the instrument for record without waiting to ascertain definitely whether the description was correct or not.

The fact that the deed was immediately executed, delivered and recorded as soon as the surveyor established the line, after telling them it was doubtful whether the description was correct, strongly corroborates the claim of Savage that the deed correctly described all the land intended to be conveyed, and that the parties agreed upon the land described as that to be conveyed, whether it turned out to be half of the original tract or not.

This court has often held that even a mere preponderance of parol evidence is not sufficient to overturn the terms of a written instrument and warrant its reformation, and that, in order to accomplish that, the evidence "must be clear, unequivocal and decisive." *McGuigan* v. *Gaines,* 71 Ark. 614; *Goerke* v. *Rodgers,* 75 Ark. 72. The case of *Goerke* v. *Rodgers* was similar to this. There the testimony was evenly balanced, two witnesses of equal credit testifying on each side, and the chancellor decreed a reformation, but this court held that the evidence was insufficient to overturn the written instrument, and reversed the case. The application of that principle is fatal to appellee's right to reformation. It has not established the right, even by preponderance of the evidence; much less by evidence "clear, unequivocal and decisive."

We think the learned chancellor was wrong in the conclusion he reached, and his decree must be reversed.

Appellee questions the validity of the conveyance from Savage to appellant company on the alleged ground that the corporation had not then been organized; but appellee, being denied

the right to a reformation as against its grantor Savage, is in no position to question his subsequent conveyance to appellant.

The decree is therefore reversed, and the cause remanded with directions to dismiss the complaint for want of equity.

ON RE-HEARING.

Opinion delivered February 11, 1907.

McCULLOCH, J.  We are asked to reconsider the case and affirm the decree of the chancellor, or at least to modify our former decision so as to direct a decree against appellants, restraining them from interfering with appellee's use of a railroad spur or switch track running across the strip of land in controversy. After careful reconsideration of the question of appellee's right to a reformation of the deed from Savage, we see no reason to change the conclusions expressed in the former opinion. The evidence is insufficient to justify a reformation of the deed.

The other question of appellee's right to use the switch was not discussed in the former opinion, and we do not now deem it proper to pass upon it as the proof on this issue was not sufficiently developed below to establish the rights of the parties in this respect. It is not shown whether the switch runs across the strip in controversy or whether at that point it is not within the limits of the railroad right of way. Mr. Abeles testified that the railroad company claims a right of way 50 feet wide on each side of the track, and that if it is as wide as that it covers the place where the switch crosses the strip in controversy. The proof does not, however, show definitely the width of the right of way. So we have no means of ascertaining from this record whether the switch is on the land of appellant or of the railroad company. Nor does the proof show that appellant has attempted to prevent appellee from using the switch. We do not, therefore, think there is enough before us to justify us in passing upon the rights of the parties with reference to the switch.

The former judgment of the court will be modified so as to make the dismissal of appellee's complaint without prejudice to

the right to litigate the question which may arise in dispute between the parties with respect to the use of the switch. In all other respects the prayer of the petition is denied. It is so ordered.