HOOVER v. GRAY.

Opinion delivered June 28, 1909.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—A chancellor's findings of fact are conclusive on appeal unless they are clearly against the preponderance of the evidence. (Page 251.)

2. REFORMATION OF INSTRUMENTS—MISTAKE—SUFFICIENCY OF EVIDENCE.— A deed will not be set aside for mistake unless the evidence of mistake is clear,. unequivocal and convincing. (Page 251.)

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Mrs. James B. Gray, appellee, on January 21, 1908, instituted this suit in the Lonoke Circuit Court against appellant to recover a strip of land off the south half of the northwest quarter, 11, T. 2 S., R. 9 west, four rods in width and one-half mile in length consisting of 4.17 acres. Appellee alleges that she is the owner of the northwest quarter of the northwest quarter and the south half of the northwest quarter of section 11, T. 2 S., R. 9 west; that the land of appellant (the N. ½ S. W. ¼ Sec. 11, T. 2 S., R. 9 W.) adjoins her land; that appellee and appellant deraign title by mesne conveyances from R. C. Walker; that her deed is from J. F. Walker, and calls for the number of acres set forth in the survey of the United States government, whether it be more or less than 120 acres, and the United States government survey calls for 128½ acres. She alleges that appellant is in the unlawful possession of the four acres for which she sues; that same is in a high state of cultivation, and she asks for damages in the sum of $150.

The appellant answered, admitting that he was in possession of the land in controversy, and that it was in a state of cultivation, but denied that his possession was unlawful. He sets up the following: That R. C. Walker purchased the West ½ of 11, 2 S., 9 W., partly with money belonging to J. F. and R. O. Walker, his sons, taking the deed to himself. That the lands were laid off into lots No. 1, 2, 3 and 4, R. O. Walker taking lot No. 1 and J. F. Walker taking lot No. 2; R. C. Walker retaining lots No. 3 and 4. Deeds were made to R. O. and J. F. Walker to their re-

spective tracts, and they were placed in possession of same, but in preparing the deeds ordinary blanks were used, and the lands were described according to the survey calls, and the formal words "more or less" used in connection with the number of acres; but that it was not the intention of R. C. Walker to convey any land other than those embraced in the lots herein above referred to. That subsequently Hoover became the grantee of R. C. Walker to lot No. 3, and a similar mistake was made in the deed to him; that he actually purchased and was placed in possession of the tract lot No. 3, although the deed purported to convey N. ½ S. W., section 11, 2 S., 9 W., containing 80 acres, "more or less." That appellee knew at the time she purchased the tract that she was actually getting the tract of land that had been purchased by J. F. Walker; that he was not in possession of the strip of land in controversy, did not claim the same, and that she was not buying that. That at the time she purchased from J. F. Walker she knew that appellant was in the actual possession of said land claiming title adverse to J. F. Walker. Seven years adverse possession is pleaded.

Appellant prayed that the complaint be dismissed, that the deeds made by R. C. Walker to J. F. Walker and from J. F. Walker to appellee be reformed so as to correctly describe the land sold by R. C. to J. F. Walker, and from J. F. Walker to appellee, that his title be quieted, and for general relief, etc.

The cause, on motion of appellant, was transferred to the chancery court. The testimony showed that R. C. Walker on October 19, 1900, purchased for himself and his sons J. F. and R. O. Walker the west half of section 11, township two south, range 9 west, in Lonoke County, Arkansas. R. C. Walker took the deed in his own name. The proof on behalf of appellant tended to show that soon after the purchase of the land R. C. Walker had a surveyor to lay it off into four lots numbered respectively 1, 2, 3 and 4, that the corners to these lots were designated by iron stakes driven down at the corners of each of the lots, that the Walkers agreed to partition the land among themselves, that according to the agreement J. F. Walker was to have lot 2 as above designated, R. O. Walker was to have lot 1, and R. C. Walker was to have lots 3 and 4. R. C. Walker executed his deeds to his sons to carry out the partition as agreed upon, that

the deed to lot two described the land intended to be conveyed as
the S. ½ of N. W. ¼ section 11, township 2 south, range 9 west,
containing 80 acres "more or less," but that the parties to this
deed only intended by it to convey the lands contained in lot num-
ber 2 as it had been designated by the metes and bounds agreed
upon; that the deed from R. C. Walker to R. O. Walker conveyed
lot number 1, describing it as N. W. ¼ N. W. ¼ and N. E. ¼
N. W. ¼, sec. 11, T. 2 south, range 9 west, containing 80 acres
more or less; that the parties to the deed intended that the land
contained in lot 1, as designated by them in their partition agree-
ment, should be conveyed by the deed; that R. C. Walker retained,
under the agreement, the lands contained in lots 3 and 4, and that
on the 3d day of January, 1903, he conveyed the lands contained
in lot 3 to appellant, W. L. Hoover, describing it as the north half
of the southwest quarter of section 11, township 2 south, range
9 west, containing eighty acres more or less; that appellant went
into possession, under this deed, of the land contained in lot 3, as
designated by the corners in the agreement of partition between
the Walkers; that in 1904 he built a fence on the line between
lots 2 and 3, marking the south boundary line of lot
2 and the north boundary line of lot 3, according
to the agreement of partition, and that he had cultivated such
land every year since. The testimony on behalf of appellant
further tends to show that prior to the sale of the land from J. F.
Walker to appellee, J. F. Walker and the husband of appellee,
who had acted as her agent in the matter, went upon the land, and
that J. F. Walker pointed out the division line between appellant
and himself.

The testimony on behalf of appellant tends further to show
that appellee's husband and agent, before the purchase of the
land from Jas. F. Walker and R. O. Walker, offered sixty dol-
lars an acre for the land, and told parties after the purchase that
he had paid sixty an acre for it; that the purchase of the lands of
Jas. F. Walker by appellee was made in 1905; that appellee's
agent knew at that time that appellant was claiming to the fence
between his tract and that of Jas. F. Walker from whom appellee
purchased, but did not have a survey made to ascertain the exact
boundary between the tracts until November 1907; that soon after
the purchase appellee had the line run north and south between the

forty acres purchased from R. O. Walker and another forty acres owned by R. O. Walker, but did not take any steps to ascertain the boundary between appellee and appellant.

The testimony on behalf of appellee tended to prove that her husband and agent, Jas. B. Gray, purchased the land described in the deeds to her from Jas. F. and R. O. Walker and containing 120 acres "more or less," according to the United States survey; that she paid $7,200 for the land purchased; that he, Gray, told Jas. F. Walker at the time of the purchase that forty-eight hundred dollars was a high price to pay for farm land, being sixty dollars per acre for his tract of eighty acres, and that Jas. F. Walker remarked that it was true that it was a high price, but that it was good land, all in cultivation, except an acre or so, and that it was a large section, meaning that there was an overplus in the government call in the N. W. of section 11, and that if appellee purchased she would receive more than eighty acres. At the time the land was purchased from Jas. F. Walker he never in any manner intimated that there was any verbal agreement as to the lines. The purchase was made from him according to the government survey, and the deed was executed accordingly. Gray, the agent, went with Jas. F. Walker, to look at the land, saw that there was a fence on the south side running east and west, that had been recently built. Mr. Jas. F. Walker did not say whether it was on the line or not. That, after the purchase, appellee through her agent took possession of the part under fence, and later when the land was surveyed the agent demanded possession of the strip in controversy. Witness Gray explained that he had stated to parties that he had paid sixty dollars per acre for the land. He meant that he had bought one hundred and twenty acres according to the government call, for which he paid $7,200, which would be understood in the regular and ordinary calls of land as $60 per acre that he paid, but the witness explained that he knew and so did Walker that the calls were for more than 120 acres. Witness stated in regard to the survey that it was perhaps negligence for him to wait for the first two or three years while appellant was in possession cultivating the land to have the survey made in order to ascertain the exact lines, but stated further that he had been trying for something like a year to get the surveyor down prior to the time the land was sur-

veyed. The witness also stated that he had notified appellant about the survey, and that he had refused to assist in the survey. It was shown that R. C. Walker and his sons J. F. and R. O. held the lands as tenants in common until the deeds were made to partition the lands among them. It was shown that the draughtsman of these deeds drew them according to the description given by the parties themselves. Also that the deed of R. C. Walker to appellant was drawn according to the description given by the parties to it. It was shown that Jas. F. Walker at the time he executed the deed to Mrs. Gray knew that the deed from his father to him called for the south half of the northwest quarter, sec. 11, T. 2, range 9 west, containing 80 acres more or less; that he gave appellee's agent this deed and did not inform him that there was any mistake in the deed. It was shown that the deed from Jas. F. Walker to appellee described the land in the same way as the deed from his father to him. Appellant's deed from Jas. F. Walker conveyed to appellee lands which according to the calls included the 4.17 acres for which she sues appellant. This was shown to be the fact by a surveyor of the United States government, and a survey made by the county surveyor. The proof showed that appellant had been in possession of the land since January, 1903. The rental value was six or seven dollars per acre. The court found that appellant was in the unlawful possession of the land, and rendered a decree in favor of appellee for the land and $108.08 damages. To reverse the decree is the object of this appeal.

*T. C. Trimble, Joe T. Robinson* and *T. C. Trimble, Jr.,* for appellant.

The evidence and circumstances show that appellee intended to purchase the land within the fence pointed out to her agent as the boundary and accepted as such for three years; that within the fence are 81.75 acres which the parties intended should pass, and which satisfy the term "80 acres more or less" used in the deed, and do not include the 4.17 acres in controversy. The deeds should be reformed. 10 N. Y. 319; 60 N. Y. 298; 83 Ky. 623; 50 Ark. 179; 169 Ill. 73; 81 Me. 337; 80 Mich. 139; 86 Mich. 121; 46 N. H. 83; 102 Mass. 24; 3 Ch. Div. 779.

*Jas. B. Gray,* for appellee.

The evidence fully sustains the chancellor's finding. It is elementary that, before a deed will be reformed or revoked, the evidence on the part of the party seeking reformation must be clear, positive and convincing. Again, the findings of fact by a chancery court will not be disturbed unless clearly contrary to the preponderance of the testimony. 85 Ark. 83; 71 Ark. 605; 68 Ark. 314; 77 Ark. 216; 78 Ark. 420.

WOOD, J. (after stating the facts). The decree of the chancellor is certainly not clearly against the preponderance of the evidence. *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166; *Cranford* v. *Cranford,* 85 Ark. 83, and cases cited. On the contrary, the preponderance is with the chancellor's finding. The law is well established that a deed will not be set aside unless the evidence of mistake is clear, unequivocal and convincing. *Marquette Timber Co.* v. *Chas. T. Abeles Co.,* 81 Ark. 420; *Davenport* v. *Hudspeth,* 81 Ark. 166. There is no such evidence in this record. It was purely a question of fact under the evidence as to whether there was any agreement between the Walkers in the first instance for a partition of the lands between them different from that indicated by the deeds. The deeds were intended, as the Walkers, R. C. and Jas. F. testify, to convey the lands according to a verbal understanding by which the lands had been laid off into lots, and these lots defined by metes and bounds. But there was no written agreement indicating that the lands were to be partitioned according to certain metes and bounds. The deeds themselves are very strong evidence, if not conclusive, that the lands were to be partitioned, not by metes and bounds, but by the legal subdivision shown by the government survey. When the draughtsman was asked to write the deeds, the parties to the deed did not furnish him with the description of the lands according to certain metes and bounds which they say had been designated. On the contrary, they furnished him with the description according to the legal subdivisions. He drew the deeds according to the legal subdivisions on government calls furnished by the parties. They gave him no other description. Since section 11 was a "full" or large section, it would be very unreasonable to hold that the parties did not know that a partition by metes and bounds without regard to the government calls would not cor-

respond with those calls, unless by the merest accident. The fact, therefore, that they conveyed by the legal subdivisions tends to show that there was no other partition contemplated or agreed upon. The chancellor was clearly warranted in finding that no other partition was made among the Walkers than that indicated by the deeds, and that therefore appellant by his deed from R. C. Walker acquired no title to the land in controversy, and that his possession thereof was unlawful.

No error being found, the decree is affirmed.