HICKS, SPECIAL ADMINISTRATRIX *v.* RANKIN.

4-8636

214 S. W. 2d 490

Opinion delivered November 8, 1948.

*Ernest Briner,* for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

WINE, J. This suit was filed in the Chancery Court of Saline County in 1947 to reform a certain deed executed in 1929 by S. F. Hicks and Margaret T. Hicks, his wife, as grantors, to appellee as grantee.

Upon a hearing of this cause the chancellor entered a decree reforming said deed so as to include one acre, alleged to have been omitted through error in the original deed, described as: All that part of the southeast quarter of the northwest quarter of section 18, township 2 south, range 12, west, which lies east of the Little Rock and Sheridan public road situated in Saline county, Arkansas.

Appellants have appealed from this decree of reformation.

On July 14, 1926, a "Contract of Sale of Real Estate" was made and entered into by and between S. F. Hicks as "seller" and Ruth Rankin as "buyer" for 40 acres of land immediately east of the one acre hereinabove described, together with an additional 2½ acres not here in controversy and the one acre which is the subject of this litigation for a total consideration of $2,000 payable in installments extending to November 1, 1929.

It is not controverted that the appellee defaulted on the last payment due under the terms of said contract and that some "adjustment" was made between the parties as a quitclaim deed dated September 5, 1929, was executed by the appellee back to the "seller" (S. F. Hicks) for the 2½ acres not here in controversy and that a warranty deed was executed on the same date by S. F. Hicks, *et ux,* as grantors to the appellee as grantee covering the land described as follows: "The southwest quarter of the northeast quarter, section 18, township 2

south, range 12 west, containing 40 acres." This 40 acres is situated immediately east of the one acre here in controversy. No mention was made in either of these two deeds of the one acre out of which this litigation arose, said one acre being a triangular or wedge shaped tract fronting on the Little Rock and Sheridan highway and extending north from the south line of said 40 acres something more than half the depth thereof.

The testimony is in conflict. W. M. Rankin, husband of the appellee, testified that he acted as the agent of the appellee in this transaction and that it was his understanding that the one acre in controversy was included in the deed to the 40-acre tract. He did not inspect the deed himself, but depended upon his attorney who drafted the contract and deed. This witness further testified that he had paid taxes on the one acre in controversy for the years 1944 and 1945; that he learned "maybe 6 years ago, maybe 7" before the trial in the Chancery Court, November 17, 1947, that the one acre in controversy had not been conveyed to the appellee.

It was stipulated that Hicks paid the taxes on the land in controversy under good description for the years 1939, 1940, 1941, 1942, 1943 and 1946, and that for the year 1938 and prior years the land was assessed only as a part description.

S. E. Freeman, son-in-law of Hicks, in checking the taxes discovered a forfeiture to the State of Arkansas, secured a deed from the State Land Commissioner in his own name and, in turn, reconveyed title to Hicks, the deed from the State to Freeman being dated May 23, 1938, for the taxes of 1926-29-30 described as Pt. SE¼, NW¼, S. 18, T. 2 S., R. 12 W.

The appellee herself did not testify in the trial court, her husband, W. M. Rankin, being the only witness called by the plaintiff except S. F. Hicks, who was first called by the plaintiff and later testified in his own behalf that the "Contract of Sale of Real Estate" and deed were prepared by appellee's attorney, and this was not disputed. He, too, testified that appellee defaulted on the last payment due under the terms of the purchase con-

tract and that at the request of the appellee, he took part of the land back in forgiveness of the last installment. Appellee's lawyer prepared the deed which he (Hicks) and his wife signed and thought "everything was settled."

George T. Blackman, professor at Ouachita College, Arkadelphia, a son-in-law of S. F. Hicks, testified that in 1938 he, together with S. E. Freeman, another son-in-law of S. F. Hicks, went to see a Mr. Banks, who was appellee's successor in title to the south half of the 40 acres herein described and an agreement was made to "meet on Monday and move the fence to the proper line." This was deferred because Banks, at that time, was holding possession only under a contract of sale and did not have fee simple title, but later "we discussed the matter with the plaintiff's counsel, and his advice at that time was why raise a controversy over the fence, wait until Mr. Banks gets title and we can adjust the fence without any complaint so that is the reason the fence was not moved in 1938."

Margaret Hicks testified in substantial corroboration of her husband S. F. Hicks.

While it is a well established principle of law that equity will, in certain cases, invoke its jurisdiction to reform a written instrument by parol evidence, it is equally well established that a preponderance of the evidence alone is not sufficient. The proof must be clear, unequivocal and decisive. *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52; *Goerke* v. *Rodgers,* 75 Ark. 72, 86 S. W. 837; *Tillar* v. *Wilson,* 79 Ark. 256, 96 S. W. 381; *Marquette Timber Co.* v. *Chas. T. Abeles Co.,* 81 Ark. 420, 99 S. W. 685; and *Cherry* v. *Brizzolara,* 89 Ark. 309, 116 S. W. 668, 21 L. R. A., N. S., 508.

This doctrine of equity is almost as ancient as our system of jurisprudence and was adhered to in the early English cases. In the case of *Ingram* v. *Child,* 1 Bro. 94, Lord Thurlow said "that a mistake creating an equity *de hors* the deed, should be proven as much to the satisfaction of the court as if admitted." While this rule has been relaxed in American courts, in the early American

case, October term, 1830, *United States* v. *Munroe,* 5 Mason's Rep. 577, Fed. Cas. No. 15, 835, Judge Story, speaking for the court, said: "In cases of asserted mistake in written instruments, it is not denied that a court of equity has authority to reform the instrument. But such a court is very slow in exerting such an authority, and it requires the strongest and clearest evidence to establish the mistake. It is not sufficient that there may be some reason to presume a mistake. The evidence must be clear, unequivocal and decisive; not evidence which hangs equal, or nearly in *equilibrio.*"

In this case we find the appellee (her husband, a man of learning, being a former United States Commissioner and who acted as her agent in all transactions relative to the matter) seeking reformation of a deed executed more than 19 years ago by an able lawyer of her own choosing, known to be particularly skilled in matters of real estate and land descriptions, who had the "Contract of Sale of Real Estate" available to him when the transaction was closed and the deed prepared. The grantor in this deed was an unlettered man who could only "read a little."

Appellee accepted this deed and caused the same to be recorded, making no complaint until the filing of this suit, with the exception of a time some six or seven years prior thereto when he caused a letter to be written by an attorney to S. F. Hicks.

Appellee, after being apprised of the fact that the one acre in controversy was not included in her deed, made no attempt to seek a reformation in the ensuing six or seven years, parting with title to the 40 acres immediately east of the land in controversy and, although not plead in the instant case, appellee does not appear to be the real party in interest.

Appellant's answer filed in the trial court, plead the statute of limitations, laches and estoppel, but we deem it unnecessary to discuss these pleas, for, on the whole, the evidence in this case is not sufficient to meet the rule early adopted and long followed by this court and well expressed in the case of *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S. W. 198, 202 Ann. Cas.

1914A, 511: "It is true that this is a suit instituted in a court of chancery, and is to be determined by principles enforceable in such court, and that equity will reform a written contract on the ground of mistake. But, to entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties.; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties thereto. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument."

The principle therein expressed has been consistently followed by this court. In the more recent case of *Berk, et al.,* v. *Beckett, et al.,* 200 Ark. 1189, 137 S. W. 2d 898, this court sustained the Chancery Court in refusing to reform a certain deed executed some 19 years earlier in which it was alleged that there was an error in expressing the interest intended to be conveyed. The court quoted with favor from the case of *Burns* v. *Fielder,* 197 Ark. 85, 122 S. W. 2d 160:

"The evidence necessary to impeach the solemn recitations of the deed must be clear and convincing. As was said in *Bevens* v. *Brown* (196 Ark. 1177), 120 S. W. 2d 574, such evidence 'must be so clear that reasonable minds will have no doubt that such an agreement was executed. It must be so convincing that serious argument cannot be urged against it by reasonable people.'

"Tested in the light of this rule, we do not believe the purported agreement should have been accorded that high degree of verity which must attach to alleged verbal reservations or conditions in order to overthrow solemn recitals of a deed. Business transactions must have finality. Conveyances must not be exposed to the caprice of parol, nor explained away by less than that *quantum* of evidence which essentially attains the dignity of clarity, impressing conviction."

Other cases enunciating the same rule may be found in West's Arkansas Digest, Reformation of Instruments,

Vol. 15. Tested by the rules of these cases, it is clear that the proof here does not meet the requirements essential for reformation for mutual mistake.

The decree of the Chancery Court is reversed with directions to proceed consistently with this opinion.