HERVEY MIZELL *v.* GARNER CARTER, MILDRED CARTER, WANDA HYATT, RALPH HYATT, HARRY C. HALL AND MRS. HARRY C. HALL

73-204                                                    504 S.W. 2d 743

Opinion delivered February 4, 1974

*Batchelor & Batchelor,* for appellant.

*Carl Creekmore,* for appellees.

CARLETON HARRIS, Chief Justice. On December 19, 1967, appellees Garner and Mildred Carter, husband and wife,

executed a deed to appellant Hervey Mizell and his wife to a tract of land purporting to convey 10.38 acres, which deed was thereafter duly recorded on January 10, 1968. On April 25, 1972, the Carters executed a deed to Wanda Hyatt, one of the appellees herein, to the northerly 3 1/2 acres of the land which had been deeded to Mizell, this deed being subsequently recorded. Thereafter, at various times, Mrs. Hyatt's husband took a dozer upon this 3 1/2 acre tract, removing vegetation and rock, and constructed a road across a portion of the land connecting up with an earlier road that had been constructed before Mizell ever purchased the property. In the first part of July, appellant complained to Hyatt, at which time both parties apparently learned that the other (actually Hyatt's wife)[1] had a deed to the same 3 1/2 acres. Mizell instituted suit on July 13, 1972, against the Carters, the Hyatts, and Harry C. Hall and wife, the Hyatts having sold the property to the Halls, but no deed being recorded since the property had not been completely paid for, seeking judgment against the Carters and Hyatts for $2,500 damages,[1a] asking that the deed from the Carters to Hyatts be cancelled and set aside, and seeking an injunction against all defendants from trespassing on the property in any manner.

The Hyatts and Halls answered, pleading laches, estoppel and unjust enrichment as a defense and the former further prayed judgment against the Carters for breach of warranty in case judgment was entered against them. By separate answer, the Carters asserted that the deed should be reformed because of mutual mistake, or a mistake by the Carters and fraud by Mizell, and stated that they were not aware that any of the property conveyed to Wanda Hyatt included land which had previously been deeded to the Mizells.

---

[1] The record is not clear why the deed was made to Wanda Hyatt. Carter testified that he sold and conveyed to Hyatt and wife, the consideration being work done by Hyatt on Carter's property.

[1a] In addition to the other allegations, claim for damages was also based on a contention that a dam which had been constructed by Hyatt on Hyatt's own property had caused a creek on the 3 1/2 acres in dispute to fill up with dirt and further, had caused an erosion of the creek bank. The contention was really that the damage occurred because Hyatt had failed to properly maintain his dam.

On trial, the court held that there was no question but what the parties had agreed upon a price of $100.00 per acre for the land and that appellant had paid at that rate for 10.38 acres. But the court held that the parties knew that the land which was to be purchased "was that land up to the first bluff upon which the plaintiff has his house trailer and that the lands below the bluff and fronting on the creek were the lands of the Carters to be specifically retained by them", and that a mutual mistake had been made as to the exact description of the land. The court held that Mizell should have received 3.9 acres as the agreed conveyance from the Carters and it thereupon ordered the deed reformed to that effect and held that Mizell should be reimbursed for the additional amount he had paid for the ten plus acreage together with interest from the date of the initial payment to the Carters until the conclusion of the trial. The court also found that Mizell was entitled to no damages against any of the defendants; further, that the work done by appellee Hyatt on the stream or creek property was done upon property belonging to Hyatt and others upstream from the land in controversy and that this work did not damage any lands of Mizell or anyone else. In accordance with these views, the court ordered reformation of the deed from the Carters to the Mizells as set out in this paragraph and denied damages. From the decree so entered, appellants bring this appeal. Several points are urged for reversal, but the litigation can be disposed of without a discussion of each.

Let it first be remembered that we have clearly stated many, many, times that parol evidence of a mistake must be clear and convincing before reformation is justified. In *Mitchell* v. *Martindill*, 209 Ark. 66, 189 S.W. 2d 662, quoting an earlier case[2], the court said:

"The authorities all require that the parol evidence of the mistake, and of the alleged modification, must be most clear and convincing, . . . or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even

[2]*Sewell* v. *Umsted*, 169 Ark. 1102, 278 S.W. 36.

upon a mere preponderance of the evidence, but only upon a certainty of the error."

In *Hicks, Special Administratrix* v. *Rankin,* 214 Ark. 77, 214 S.W. 2d 490, this court said:

"Appellant's answer filed in the trial court, plead the statute of limitations, laches and estoppel, but we deem it unnecessary to discuss these pleas, for, on the whole, the evidence in this case is not sufficient to meet the rule early adopted and long followed by this court and well expressed in the case of *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S.W. 198, 202 Ann. Cas. 1914A, 511: 'It is true that this is a suit instituted in a court of chancery, and is to be determined by principles enforceable in such court, and that equity will reform a written contract on the ground of mistake. But, to entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties thereto. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument." ***

"The evidence necessary to impeach the solemn recitations of the deed must be clear and convincing. As was said in *Bevens* v. *Brown* (196 Ark. 1177), 120 S. W. 2d 574, such evidence 'must be so clear that reasonable minds will have no doubt that such an agreement was executed. It must be so convincing that serious argument cannot be urged against it by reasonable people.' "

We think the proof in the case before us falls far short of the quantum of proof required for reformation. The evidence shows that the deed conveyed 10.38 acres of land, being a part of two 40 acre tracts. Undisputedly, neither man, when the oral agreement to sell was made, knew just how much acreage was involved, but it is also

undisputed that their agreement was that, following a survey, Mizell would pay $100.00 per acre.

The surveyor was obtained by Mizell, and although Carter was not present when the survey was made, he had every opportunity to be present, but voluntarily chose not to go. He said he saw them (Mizell and surveyor) out surveying the property that was to be sold, but didn't go up to where the survey was taking place. The finding of 10.38 acres was not disputed and Carter and wife executed the deed and received the sum of $1,038 in payment therefor. Within two months, and over four years before Hyatt obtained the land from Carter, the Mizells recorded their deed.

Of course, under the provisions of Ark. Stat. Ann. § 16-114 (Repl. 1968), the recording of a deed is constructive notice to all persons from the time it is filed for record in the office of the recorder of the proper county, and it thus appears that the Mizells did all that was required to protect their title. The deed itself was prepared at the instance of Mizell, but by Carter's then attorney, and Carter testified that he might have suggested that Mizell go to that particular lawyer. Not only that, but Carter testified that he had in the past done some surveying in rough territory, and it is extremely difficult to understand how one, who had lived in the area for 12 or 13 years, and who had experience in surveying, would not be able to know the difference between 3 1/2 acres and 10 1/2 acres; in fact, Carter testified that he did know the difference.

As to the Hyatts, the testimony reflects that no attorney examined the title, no abstract was obtained covering the property, nor was any check made of records at the courthouse.

With the matters which we have herein set out, it would not appear there is much further need to discuss the evidence. Carter testified that he had walked over the property with Mizell that was to be sold at various times in the past, although Mizell testified that they walked over the area which he actually purchased.

There was also disputed testimony as to which had possession of the property during the approximately four-year period from the time of the purchase by Mizell to the time of the purchase by Hyatt. The Carters testified that they used the property for a cow and calf to graze, but Mizell testified that this was with his permission. Mizell also testified that he used the land to raise oats and graze his horse, which Carter admitted, but the latter said that this was with his permission.

Fred Millican testified that he was acquainted with the property, didn't know the exact boundary lines, but had walked over it with Mizell many times during the last four years, the two hunting and fishing together. He said that no one objected to their being on the property and he knew that Mizell had claimed up to, and across, the creek[3], which was a portion of the property here in dispute.

Summarizing, Mizell received a deed to 10.38 acres of land, paid for that amount of acreage at an agreed price per acre[4], the purchase being made from an individual familiar with land surveys, recorded his deed about four years before the purchase by Hyatt, the latter making no effort to ascertain the status of the title. We certainly cannot agree that the evidence was clear, cogent and convincing that a mutual mistake was made, nor did the evidence establish fraud on the part of Mizell.

As far as damages are concerned, we find no preponderance of evidence that would enable us to say the chancellor was incorrect in that finding.

Reversed as to the title of the property; affirmed as to the failure to award damages. The decree is thus

---

[3]Ron Hatfield testified on behalf of Hyatt, but his testimony dealt with damages.

[4]From the evidence of Mrs. Carter:

"Q. He did pay you $100.00 an acre I believe for that land?
A. Yes, for 10 3/4 acres.
Q. And you want him to have this 10 3/4 acres?
A. I certainly do."

reversed, and the cause remanded to the chancery court for further proceedings not inconsistent with this opinion.

It is so ordered.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur because I think that the decree and the findings on which it is based are clearly against the preponderance of the evidence.